OPINION OF THE COURT
Edward J. Greenfield, J.
In this action for a declaratory judgment, both sides have moved for summary judgment. The court is required to construe an insurance policy issued by the plaintiff insurance company (AMIGO) to determine whether product liability claims asserted against Squibb come within the policy coverage. Both sides agree that there are no issues of fact necessitating a trial, the issue being solely a matter of interpretation of the contract by the court. (West, Weir & Bartel v Carter Paint Co., 25 NY2d 535.)
Defendant Squibb, the insured, was the manufacturer of a drug known as Diethylstilbestrol (DES). DES was a synthetic estrogen product prescribed by doctors in the 1950’s to pregnant women to prevent spontaneous abortions and to enable *223 those women to carry to term. In February, 1976, Squibb was sued in this court in the case of Boxer v Squibb & Sons (Supreme Ct, New York County, Feb., 1976). The complaint in the Boxer case alleges that the three female plaintiffs, who were born in 1952, 1953 and 1961 respectively, developed cervical cancer as a result of the ingestion of DES by their mothers during pregnancy and further alleges that such conditions were discovered in 1970, 1971 and 1975 when the plaintiffs were respectively 17, 19 and 14 years of age.
The insurance policy issued to Squibb by AMICO was in full force and effect from June 1, 1968 to January 1, 1976. The question presented to this court is whether that policy provides coverage for injuries caused by a drug which was ingested well before AMICO came on the risk in 1968 when the effects of the drug and the manifestation of injury allegedly were discovered for the first time subsequently to 1968 when the policy was in effect. AMICO, Squibb’s liability insurer, contends that its policy does not cover these injuries and Squibb insists that it does. This case appears to be a matter of first impression since there do not appear to be any prior reported New York cases interpreting the policy terms at issue.
Under the insurance policy in question, AMICO agrees to pay on behalf of the insured all sums which it becomes legally obligated to pay as damages because of (a) bodily injury or property damage caused by an occurrence, (b) employer’s malpractice injury, or (c) personal injury caused by an offense committed during the policy period. "Bodily injury” is defined as "bodily injury, sickness, disease, mental injury, mental anxiety, shock or disability sustained by any person.” "Occurrence” is defined as: "An accident or injurious exposure to conditions which results, during the policy period, in bodily injury or property damage, neither expected nor intended from the standpoint of the insured.” The "exposure” clearly occurred when the drugs were taken in 1952, 1953 and 1961, The "bodily injury” allegedly did not manifest itself until 1970, 1971 and 1975. The policy language does not limit coverage to incidents of exposure during the policy period, but rather to conditions which result in bodily injury during the policy period. A reading of the policy language would appear to indicate that coverage is predicated not on the act which might give rise to ultimate liability, but upon the result. It would be a strained interpretation to construe the occurrence *224 clause as though it covered "exposure during the policy period which results in bodily injury.” It is the result which is keyed to the policy period, and not the accident or exposure.
The language of the occurrence clause covering accident or injurious exposure differs significantly from the coverage for malpractice and for deliberate torts. The malpractice coverage comprehends injury sustained by reason of "malpractice, error or mistake committed during the policy period”. "Personal injury” covers such deliberate torts as malicious prosecution, false arrest, trespass or discrimination” caused by an offense committed during the policy period”. It does not appear that these differences in wording as to the various coverages are mere happenstance.
Insurance policies are very carefully drafted and every word and phrase employed therein have been weighed and tested with respect to its meaning and impact. Great difficulty was encountered in many situations because of the rather vague definition of the word "accident”. Accordingly, the Standard Comprehensive General Liability Policy, which was promulgated in 1966 by the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau, called for redefining "bodily injury or property damage caused by an occurrence.” The definition of an occurrence contained in the AMICO policy is precisely the same as that under the Standard Comprehensive Liability Policy. It was precisely because of recurring disputes as to whether the word "accident” referred to the act or the injury resulting from the act that the new definition was adopted. Various insurance industry commentators at the time made it clear that coverage under this clause related to the time of the resultant injury rather than the time of the initial accident or exposure. Under this language, coverage turns on the results, and not the acts. (Singsass v Diederich, 307 Minn 153.)
Result-oriented construction has been adopted in other jurisdictions. Thus, in Remmer v Glens Falls Ind. Co. (140 Cal App 2d 84), a California court held that where the policy insured against an "occurrence” rather than an "accident”, the coverage is based not upon the time when the wrongful act was committed, but at the time complaining party was damaged. Similarly, in Mut v Newark Ins. Co. (289 So 2d 237 [La], cert den 290 So 2d 910) the Louisiana Court of Appeals construed a similar policy as calling for coverage when the loss or injury was sustained during the policy period. In *225 disability and health insurance cases, the courts of our State have held that a disease or bodily injury does not include a latent condition which fails to manifest itself, but arises only when revealed. (Reiser v Metropolitan Life Ins. Co., 262 App Div 171, affd 289 NY 561; Wenger v Mutual Benefit Health & Acc. Assn., 203 NYS2d 946; Tasman v Associated Hosp. Serv. of N. Y., 19 Misc 2d 809.)
Cases involving the applicability of the Statute of Limitations, such as Schmidt v Merchant’s Desp. Transp. Co. (270 NY 287), have no bearing on the question here involved, which is whether there is insurance coverage under the carefully chosen words of a contract. In the Schmidt case, the plaintiff contracted a lung disease as a result of inhaling harmful dust while in the employ of the defendant. The disease did not manifest itself until more than three years after plaintiff had terminated his employment with defendant. In answer to the suit he then brought, defendant interposed the defense of the Statute of Limitations and the Court of Appeals held that the injury to the plaintiff was complete when the alleged negligence of the defendant caused the plaintiff to inhale the dust. The cause of action accrued then, and the Statute of Limitations began to run even though at that time no serious damage to the plaintiff had yet developed. Cases involving the Statute of Limitations of necessity turn on the issue of when the defendant’s negligent act took place, since that defines the time that the Statute of Limitations starts to run. Coverage under insurance policies however, may be result-related rather than act-related if the parties so agree by contract.
Insofar as Squibb seeks to recover attorney’s fees, although it is the settled rule that expenses incurred in defending a declaratory judgment action by one claiming policy coverage are recoverable if coverage is found (see, e.g., Johnson v General Mut. Ins. Co., 24 NY2d 42; Brown v United States Fid. & Guar. Co., 46 AD2d 97, 99; Glens Falls Ins. Co. v United States Ins. Co., 41 AD2d 869) in each of these cases, the insurer denied coverage and refused to defend the insured. In contrast, plaintiff AMIGO has been defending the insured in the Boxer v Squibb & Sons (Supreme Ct, New York County, Feb., 1976) action, with a reservation of rights. Had Squibb commenced this action, it would not have been entitled to recover its expenses (Doyle v Allstate Ins. Co., 1 NY2d 439). Under the circumstances, the court fails to see the necessity of *226 awarding attorney’s fees to Squibb in the declaratory judgment action.
Based upon the foregoing, defendant’s cross motion for summary judgment on the declaratory judgment is granted and plaintiffs motion is denied. This court declares that under the AMICO policy which was in effect from 1968-1976, liability coverage exists with respect to the claims in the Boxer case which allegedly manifested themselves for the first time during the period from 1970 to 1975.