**EMONS INDUSTRIES, INC., Plaintiff,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY and Reserve Insurance Company, Defendants.**

No. 75 Civ. 3227 (KTD).

United States District Court,
S. D. New York.

Oct. 18, 1979.

Amended Opinion Dec. 28, 1979.

Greenberg, Irwin, Pellman & Slade, New York City, for plaintiff; Frederick R. Biehl, John F. Triggs, New York City, of counsel.

Townley & Updike, New York City, for defendants Liberty Mutual Fire Ins. Co. and Liberty Mut. Ins. Co.; Philip D. Pakula, Harry H. Wise III, New York City, of counsel.

Gillen, Turk & Caliendo, New York City, for defendant Reserve Ins. Co.; Charles P. Caliendo, Martin V. Martinelli, New York City, of counsel.

Anderson, Russell, Kill & Olick, P. C., New York City, for Keene Corp., amicus curiae; Eugene R. Anderson, Jerold Oshinsky, R. Mark Keenan, Sherry Gilbert, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This action was commenced by Emons Industries, Inc. [hereinafter referred to as "Emons"] against Liberty Mutual Fire Insurance Company [hereinafter referred to as "Liberty"] and Reserve Insurance Company [hereinafter referred to as "Reserve"]. The amended complaint charges Liberty and Reserve with having breached their respective contractual obligations to defend and indemnify Emons against product liability arising from its sale and distribution of pharmaceutical products. Emons seeks a declaration that Liberty and Reserve are contractually obligated to defend it in a number of suits now pending and those which may arise in the future together with reimbursement for costs previously incurred to defend these suits and amounts paid in settlement of one of these actions.

Beginning in 1945 and continuing through much of 1971, Emons[1] engaged in the wholesale distribution of prescription and non-prescription drugs. During much of this time, Emons distributed Diethylstilbestrol, a drug which has come to be known as DES. It is a synthetic estrogen which during the 1950's and 1960's was widely prescribed for use by pregnant women to prevent certain complications including miscarriages and spontaneous abortions. Tragically, however, subsequent medical research has revealed that DES may be a

---

1. From 1945 until 1971 Emons operated under the name of Amfre-Grant in the distribution of pharmaceutical products. Thereafter, Amfre-Grant sold all its interests in the pharmaceutical area to the Ormont Drug & Chemical Company including the name Amfre-Grant. Amfre-Grant's Certificate of Incorporation was amended in 1972 to reflect this change, at which time Emons was adopted as the corporate name. Consequently, for purposes of this Opinion, Amfre-Grant will be referred to as Emons.

It is also of interest to note that since the sale of Amfre-Grant in 1971, Emons has not been engaged in the business of pharmaceutical products.

potential cause of cancer in those women who ingested it during pregnancy as well as in their female offspring.[2] As a result, numerous lawsuits were commenced throughout the United States. The parties have brought to my attention the following suits which to date have named Emons as a defendant:

In *Abel v. Eli Lilly, et al.* ["Abel"] it was charged that between 1947 through 1964 DES was distributed to the mothers of the female plaintiffs during pregnancy. The plaintiffs charge that as a result of the drug they have, as teenagers, developed cancerous or pre-cancerous conditions;

In *Bevelhymer v. Grant Chemical Co., et al.* ["Bevelhymer"] the plaintiff charges that as a result of her mother having ingested DES during 1956–57, she later developed cancer. No date is given for when this cancerous condition either manifested itself or was diagnosed;

In *Collins v. Eli Lilly Co., et al.* ["Collins"] the plaintiff charges that as a result of her mother having ingested DES during her 1957–58 pregnancy, in August, 1975, she discovered she suffered from clear-cell adenocarcinoma of her reproductive organs;

In *Ferrigno v. Eli Lilly Co., et al.* ["Ferrigno"], denominated as a class action, the representative charges that her mother ingested DES during a 1952–53 pregnancy and, as a result, the plaintiff subsequently developed cancer;

In *Sochanchak v. Eli Lilly Co., et al.* ["Sochanchak"], denominated as a class action, the complaint charges that as a result of the ingestion of DES by pregnant women between the years 1947 through 1964, their offspring have developed cancer or pre-cancerous conditions;

And in *Spivey v. Amfre-Grant, Inc.* ["Spivey"] the plaintiff charges that as a result of the ingestion of the drug by her mother during a 1960 pregnancy, the plaintiff developed pre-cancerous lesions. This condition was first discovered in May, 1974.

Liberty insured Emons against product liability under a series of policies between 1964 through 1970. There is some dispute, however, whether and to what extent Liberty may have insured Emons prior to 1965.[3] Reserve insured Emons against product liability for a one year period from November, 1970 through November, 1971.

Upon commencement of the DES actions set forth above, Emons notified both Liberty and Reserve of the suits and requested that they defend it in these proceedings as provided in the contracts of insurance. Both Liberty and Reserve refused to provide a defense in these suits. Later, however, Liberty and Emons entered into an agreement, dated July 28, 1978, which provided that Liberty would reimburse Emons for all costs and expenses incurred in the defense of the DES actions. The agreement further provided that Liberty reserved the right to disclaim any liability for any judgments or settlements in these actions. Reserve, on the other hand, has consistently refused to defend or indemnify Emons with respect to these suits.

None of the DES actions have yet gone to trial. The *Abel* action has been settled with respect to Emons for the sum of $40,-000.[4] The *Sochanchak* action has been dismissed with respect to Emons for want of personal jurisdiction. The balance of these actions remain unresolved and occupy various stages within the pre-trial process.

Plaintiff commenced this suit to establish the duty of Liberty and Reserve to defend

---

**2.** In addition to the possible harmful long range effects of DES, it was also asserted that the drug was in fact "contraindicated" for use in the prevention of miscarriage. Indeed, in 1971 the Food and Drug Administration required DES labels to include a statement to that effect.

**3.** It would appear from the face of these later policies that the first policy to be issued to Emons was in 1945. *See, e. g.* Liberty's Exhibits A and B. Consequently, the real issue is the

terms and extent of coverage of these earlier policies. Since neither Emons nor Liberty have copies of these earlier policies, the terms and coverage will have to be established, if at all, through extrinsic evidence.

**4.** The Court dismissed as to the other defendants on the ground that the statute of limitation had run.

it in these actions and to recover funds expended in the continuing litigation and settlement of these actions. Emons now moves for partial summary judgment insofar as its claims against Reserve are concerned and seeks leave to amend its complaint to include two recently filed suits in which it charges the defendants owe a duty to defend and indemnify. Liberty has also moved for summary judgment on three of its cross-claims lodged against Reserve which seek:

A declaration that Reserve is liable for all or part of the defense costs in the pending actions;

Judgment against Reserve for all or part of the $16,681.07 in past defense costs paid by Liberty; and

Judgment against Reserve for all or part of the $20,000 paid by Liberty towards Emons' share of the *Abel* settlement.

Finally, Reserve opposes both plaintiff's and Liberty's motions and itself moves for summary judgment on its second affirmative defense, contained in its amended answer, which provides that "the incidents which gave rise to the personal injury cases . . . were not actions or occurrences within the meaning of the defendant'[s] . . . contract or contracts." In addition, Reserve seeks leave to implead, as third-party defendants, a number of insurance companies who have insured Emons since 1972 after Emons had terminated all activities in the pharmaceutical industry.

I turn first to Emons' motions for partial summary judgment and to amend its complaint. It is clear that leave to amend a complaint is to be freely granted. *See* Fed. R.Civ.P. 15(a). It is evident that these actions which plaintiff seeks to include herein involve DES cases in which it has been named as a defendant and in which it argues that Liberty and/or Reserve owe it a defense and indemnification should liability be found. Thus, Reserve's protestations notwithstanding, in light of judicial economy, plaintiff's complaint is amended to include a request for a defense and indemnification in the *Ferrigno* and *Bevelhymer* ac-

tions mentioned above. Plaintiff's motion for summary judgment, however, requires a more protracted analysis.

It appears that Reserve no longer contests its "duty" to defend Emons in the DES actions outlined above. Originally Reserve asserted, by way of counter-claim against Emons, that as a result of certain material misrepresentations by Emons in procuring the insurance policy, Reserve was entitled to rescind the policy. However, by letter dated November 15, 1978, Reserve withdrew its counter-claim and "explored" the possibility of participating in past and future litigation expenses. More importantly, nowhere in its papers does it deny its duty to defend the plaintiff either in the settled action (*Abel*) or in those suits still pending. Indeed, Reserve states that

the escence [sic] of the dispute between the parties does not center around the duty to defend under their policies but rather in the amount to which it is [sic] legally obligated to be expended by each in the defense of the underlying personal injury actions and further, which attorneys should conduct the defense of those personal injury lawsuits.

Reserve's Memorandum of Law at 2.

Consequently, insofar as plaintiff seeks a declaration that Reserve is under a duty to defend it in the actions listed above, the motion for partial summary judgment is granted.

It remains to be determined to what extent must Reserve contribute to the past and future defense of Emons and who may designate the counsel to undertake such defense.

■ Reserve argues that it owes only its proportionate share of the litigation expenses. It computes this share by use of a rather interesting, albeit self serving, formula: since the complaints in issue specify a period of exposure to DES and a manifestation of medical problems between 1947 through 1975, the amount to be contributed to litigation expenses should be fixed by the number of years a given carrier insured Emons over the liability years. Despite its

facial appeal, this formula of apportionment must be rejected.

> Reserve's insurance policy provides that:
> The company [Reserve] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . ., even if any of the allegations of the suit are groundless, false or fraudulent . . .

It further provides that:

> The company [Reserve] will pay on the behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury.

It is apparent that Reserve's duty to defend Emons extends beyond its duty to indemnify. Thus, "[t]he insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is 'groundless,'" false or even fraudulent. *Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750, 752 (2d Cir. 1949) (Learned Hand, C.J.). Indeed, in *Lee* the Court, construing an almost identical "duty to defend" provision, held that:

> the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury "covered" by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact "covered."

178 F.2d at 751.

Thus, the Court concluded that "[w]hen . . . the complaint comprehends an injury which may be within the policy . . the promise to defend includes it." *Id.* at 753.

Applying these principles to the case at bar, it seems clear that at least at this juncture, Reserve's duty to defend is coextensive with that imposed upon Liberty. Each complaint in issue states claims, which, qua claims, comprehend injuries potentially within the coverage of Reserve's policy despite the fact that the policy protected Emons for only a one year period. This is true even though there may be some dispute as to whether "bodily injury," as contemplated in Reserve's policy, resulted when the DES was ingested (1947 through 1965) or when the claimant contracted a cancerous or pre-cancerous condition (at various points after the birth of the female offspring). Suffice it to say that both interpretations are potentially liability producing. *But see American Motorists Insurance Co. v. E. R. Squibb & Sons, Inc.*, No. 77–17593 (Sup.Ct.N.Y.Cty. October 20, 1977), appeal withdrawn with prejudice, 65 App.Div.2d 675 (1st Dep't 1978) (date of manifestation is crucial date). Thus, it may develop that these claims fall within either Liberty's coverage or that of Reserve. Consequently, the disparate number of years of coverage notwithstanding, both insurance companies stand on equal footing with respect to potential liability and their concomitant duty to defend.[5]

Reserve's request for an order directing that it be permitted to appoint counsel to litigate those actions still pending must be rejected insofar as it attempts to oust the counsel chosen by Liberty who has, to date, defended these actions on behalf of Emons. While Reserve's duty to defend Emons in these actions is coextensive with that of Liberty, this does not give Reserve a license to pre-empt Liberty's choice of counsel.

---

5. Reserve's reliance upon *Insurance Company of North America v. Forty-Eight Insulations, Inc.*, 451 F.Supp. 1230 (E.D.Mich.1978) is simply misplaced at this time. In *Forty-Eight* the court indeed does apportion the cost of defending the action among the several insurers. However, that case dealt with injuries resulting from exposure to asbestos. The court, addressing the question of whether the bodily injury, as contemplated in the several insurance policies, arose when the asbestos was first inhaled

or when the injuries manifested themselves, held that the exposure theory applied. Thus, in *Forty-Eight*, the duty of the several insurance companies and the extent of the liability of each were capable of precise computation. In the case at bar, however, it is not clear which theory will be applied to the several cases now pending across the United States. Thus, to adopt the reasoning employed in *Forty-Eight* would be inappropriate.

However, since there is a potential conflict as to when the bodily injuries in issue took place (ingestion or manifestation) which in turn may determine which, if any, of the operative policies cover indemnification, Reserve must be permitted to designate its own trial counsel to litigate these suits on behalf of Emons. The plaintiff, citing *American Motorists, supra,* argues that New York law is settled on this point and consequently no conflict exists. I disagree. *American Motorists* was a lower court case which was never appealed to the Appellate Division. True, while the decision is some indication of how the New York courts will resolve the issue, it is not dispositive.[6] Since the extent of Reserve's liability may very well turn upon the facts developed by trial counsel in these various actions, Reserve is entitled to designate trial counsel.

■ Turning to Liberty's motion for summary judgment on its cross-claims against Reserve, it is granted in part and denied in part. Concerning Liberty's first and second cross-claims the motion is essentially granted. As previously determined, Reserve's obligation to defend Emons in the suits in issue is equal to that of Liberty. Thus, insofar as past defense costs are concerned, Reserve is obligated to reimburse Liberty for one half of said costs. Concerning future expenses, however, the motion must be denied. Since Reserve is permitted to designate trial counsel of its own choosing to represent Emons in the future, it will thereby satisfy its obligation to defend Emons. However, should Reserve decide to permit counsel designated by Liberty to continue to represent Emons, then it shall contribute its pro rata share of the litigation expenses.

■ Finally, with respect to Liberty's third cross-claim, seeking a 50 percent contribution from Reserve for the settlement in the *Abel* case, the motion is denied. It is true that where an insurer is under a duty

to defend the insured and wrongfully refuses to do so, he is liable for the reasonable settlement of the suit. *Sucrest Corp. v. Fisher Governor Co., Inc.,* 83 Misc.2d 394, 371 N.Y.S.2d 927 (Sup.Ct.N.Y.Cty.1975), *aff'd,* 56 A.D.2d 564, 391 N.Y.S.2d 987 (1st Dep't 1977). It is equally clear, however, that the settlement must be reasonable. While I am inclined to find the settlement to be reasonable, the task of a Judge upon a motion for summary judgment is not to decide factual issues but rather to determine if triable issues of fact exist. However remote, it is possible that the settlement could be construed as unreasonable.[7] Suffice it to say that this is a question for the trier of fact.

Turning finally to Reserve's motion for summary judgment, the motion is denied. Whether the injuries alleged in the several complaints at issue herein fall within the injuries covered in Reserve's insurance policy is a material question of fact properly left for the trier of fact.

■ In addition, Reserve's motion to implead those insurance companies which insured Emons after 1971 is denied. Rule 14 of the Federal Rules of Civil Procedure permits a third-party action when the third-party defendant is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against him. In the case at bar, however, there is every indication that Emons ceased all activities in the pharmaceutical industry in 1971 and sold all its interests therein. See Footnote 2, *supra.* Indeed, after 1971 Emons acted as the lessor of railroad box cars and the operator of a shortline railroad. It is indeed unlikely that any insurance procured by Emons thereafter would contain coverage for product liability. In any event, Reserve has failed to show that these insurance policies would cover such liability. Since this information is clearly within the knowledge of

---

6. It is clear that insofar as the Reserve policy is concerned, New York law will be controlling. Indeed, the policy itself so provides.

7. Indeed, Reserve argues that since the action was ultimately dismissed as to the other de-

fendants, the *Abel* settlement was unreasonable. What Reserve fails to acknowledge, however, is that the case against Emons was somewhat stronger than against the other defendants.

Emons and as such discoverable by Reserve, the motion is denied without prejudice, to be renewed at such time that Reserve can demonstrate that the policies in issue may insure Emons against product liability.

Accordingly, the motions of Emons, Liberty and Reserve are granted and denied as provided above.

Settle judgment on five (5) days' notice.

## AMENDED OPINION

KEVIN THOMAS DUFFY, District Judge:

The plaintiff, Emons Industries, Inc., and the defendant Liberty Mutual Life Insurance Co., have jointly requested that I reconsider my earlier decision, dated October 18, 1979, on the narrow question of the manner in which Liberty's duty to defend the plaintiff and that of its co-defendant, Reserve Insurance Company, will be satisfied. In addition, the Keene Corporation, not a party to the instant action, requested and was granted an opportunity to file an amicus brief in support of the reargument.

Since it has come to my attention that certain facts upon which my prior decision rested at least in part, were not accurately presented to me earlier, the motion to reargue is granted and the Opinion modified as provided below.

In my earlier Opinion, I found that there was a potential conflict between Liberty and Reserve and permitted Reserve the opportunity to obtain counsel of its choosing to defend plaintiff. This conclusion was based upon the statement of Emons' counsel to the effect that Liberty had chosen plaintiff's counsel. As it developed, however, Emons retained its own counsel and when Liberty recognized its duty to defend the plaintiff, it concurred in the plaintiff's choice of counsel. Thus, there is no indication that any conflict presently exists either between the insured and the insurance companies or between the insurance companies themselves. Nor does a future conflict appear to be likely insofar as the defense of plaintiff is concerned.

In addition, under the circumstances, any delay on the part of Emons or Reserve in making the motion to reargue was excusable and will not defeat this motion.

I turn finally to the amicus brief filed herein. The brief argues the question of whether "manifestation" or "exposure" should govern an insurer's ultimate liability to an insured. This question, however, is not before me and I must decline the invitation to render an advisory opinion. The case before me only concerns the question of whether the defendants were under a duty to defend the plaintiff in the DES related cases. Having answered this question in the affirmative, I need not speculate as to which of the defendants, if either, will be required to indemnify the plaintiff.

Accordingly, it was inappropriate to permit Reserve to retain independent counsel to defend the plaintiff. This is a choice belonging only to the plaintiff. *Prashker v. U. S. Guaranty Co.*, 1 N.Y.2d 584, 154 N.Y. S.2d 910, 136 N.E.2d 871 (1956). Thus, Reserve is hereby ordered to satisfy its duty to defend plaintiff by contributing its pro-rata share of the current defense costs.

SO ORDERED.