**BURROUGHS WELLCOME CO., Plaintiff,**

v.

**COMMERCIAL UNION INSURANCE COMPANY, Defendant.**

**No. 84 Civ. 5267(PKL).**

United States District Court, S.D. New York.

April 8, 1986.

Cahill Gordon & Reindel, New York City (Thomas F. Curnin, J. Douglas Richards, of counsel), for plaintiff.

Siff, Newman, Rosen & Parker, New York City (Thomas R. Newman, William G. Ballaine, of counsel), for defendant.

LEISURE, District Judge:

Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 regarding the interpretation of certain liability insurance policies. This matter is before the Court on plaintiff's motion for partial summary judgment declaring that defendant has a duty to defend plaintiff against all lawsuits and claims arising either directly or derivatively from alleged exposure to a pharma-

ceutical substance known as diethylstilbestrol ("DES").

## Factual Background

Plaintiff, Burroughs Wellcome Co., is a North Carolina corporation with its principal place of business in North Carolina. It is the surviving corporation of a 1970 merger with Burroughs Wellcome Co. (USA) Inc., a New York corporation which had its principal place of business in New York. The two corporations are hereinafter collectively referred to as "Burroughs." Burroughs is engaged in the production and marketing of pharmaceuticals. From 1941 until 1957 Burroughs sold DES, a synthetic hormone given to pregnant women in the United States from 1941 to 1971 to reduce the risks of miscarriage. *See* Pub.L. No. 99–28, 99th Cong., 1st Sess., 99 Stat. 54 (1985). Ingestion of DES has been linked to breast cancer in the women who took it while they were pregnant. *Id.* Exposure of female fetuses to DES has been linked to higher incidences of vaginal adenosis at birth (the abnormal presence of glandular tissue or cells), cervical cancer and incomplete development of the female reproductive system. *See Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 7 (2d Cir.1983). In addition, DES has been linked to higher incidences of ectopic pregnancies, miscarriages, infertility and premature deliveries by women who were prenatally exposed to DES. Pub.L. No. 99–28, *supra.* It has been suggested that ingestion of DES during the first trimester of pregnancy may interfere with the normal process of tissue replacement on the vaginal walls of the female fetus. This incomplete tissue replacement may create a disposition to the development in later life of vaginal clear cell adenocarcinoma. *See* Herbst, et al., *Clear-Cell Adenocarcinoma of the Genital Tract in Young Females,* 287 N.E.J.Med. 1259, 1263 (1972); Herbst, et al., *Adenocarcinoma of the Vagina,* 284 N.E.J.Med. 878, 880 (1971); Herbst, *Clear Cell Adenocarcinoma and the Current Status of DES–Exposed Females,* 48 Cancer 484 (1981); Ostergard, *DES-Related Vaginal Lesions,* 24 Clin.Obst. & Gyn. 379, 381 (1981).[1] Exposure of male fetuses to DES has also been linked to higher incidences of testicular cancer in adults. Pub.L. No. 99–28, *supra.* The effects of prenatal exposure to DES do not manifest themselves until years later in the form of vaginal or testicular cancer in young adults, or higher incidences of sterility and miscarriage and other child bearing problems. It appears, to a reasonable degree of medical certainty, that the problems experienced by persons so stricken in adulthood can be traced back to their exposure to DES while in utero.

As a result of these medical findings, Burroughs has been named a defendant in numerous lawsuits by (1) women who ingested DES; (2) the offspring of women who ingested DES and were allegedly injured as a result of prenatal exposure; (3) grandchildren of women who ingested DES and allegedly were injured as a result of injuries to their mothers' reproductive systems; and (4) spouses of individuals allegedly injured by exposure to DES, claiming lost services and consortium.

Burroughs claims that from December 22, 1949 to April 1, 1967, it was insured against its products liabilities by Comprehensive General Liability ("CGL") policies subscribed to by defendant Commercial Union Insurance Company ("Commercial Union") or its predecessors. Burroughs claims it has notified Commercial Union of the DES lawsuits and claims, and has demanded that Commercial Union defend and pay for the defense of these actions. Commercial Union has refused to do so, contending that the injuries had not become manifest before the termination of its cov-

---

**1.** It is known with reasonable medical certainty that adenosis occurs during the first trimester of pregnancy and, additionally, that the cells which later make the transition to adenocarcinoma are present in the embryonic development by the end of the first trimester.

*Vale Chem. Co. v. Hartford Acc. & Ind. Co.,* 340 Pa.Super. 510, 490 A.2d 896, 898 n. 3, *leave to appeal granted,* 508 Pa. 603, 499 A.2d 576 (1985).

erage for DES-related products liabilities. Burroughs contends that Commercial Union's refusal to defend is based upon an erroneous interpretation of the relevant policies and Burroughs has been damaged thereby.

*The Pre-Revision Policies*

On this motion, Burroughs seeks to enforce the duty to defend provisions of the policies issued by Commercial Union before 1967. Burroughs alleges that these policies followed the standard form for CGL policies and therefore contain the same relevant language with respect to coverage, the duty to defend and the trigger of coverage. These policies provide coverage for "all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease ... sustained by any person and caused by accident." With respect to the duty to defend, the policies provide that the insurer "shall defend any suit against the insured alleging such injury, sickness, disease or destruction ..., even if such suit is groundless, false or fraudulent." Coverage is triggered in cases of "accidents which occur during the policy period."

The standard CGL form used by Commercial Union was changed in certain respects in 1966 to cover occurrences which resulted in bodily injury or property damage during the policy period. For this reason, the policies allegedly issued to Burroughs by Commercial Union's predecessors from December 22, 1949 to April 1, 1967 are hereinafter referred to as the "Pre-Revision Policies." The post–1966 policies are worded differently from the Pre-Revision Policies in significant respects and Burroughs does not seek to enforce the relevant provisions of these policies on this motion.

The post–1966 policies defined a covered "occurrence" to mean either an accident "which results, during the policy period, in bodily injury or property damage," or an accident "which results in bodily injury or property damage [which occurs during the policy period]." The reasons for these changes were described by the Hon. Abra-

ham D. Sofaer, United States District Judge of this Court, in his scholarly opinion in *American Home Products Corp. v. Liberty Mutual Insurance Co.*, 565 F.Supp. 1485 (S.D.N.Y.1983), *aff'd as modified,* 748 F.2d 760 (2d Cir.1984).

Prior to 1966, general liability policies covered liability "because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, *caused by accident* and arising out of the hazards hereinafter defined." 1 R. Long, *Law of Liability Insurance* § 11.101 at 11–4 (1979) (emphasis added). The word "accident" suggested an intent to cover only sudden, unexpected, but identifiable events. The courts were left in doubt as to whether, and to what extent, the standard policy was meant to cover liability for injuries that resulted from gradual processes, rather than from sudden events.

The insurance industry responded to the uncertainty created by the "accident" orientation of pre–1966 liability policies by establishing a task force to draft what eventually became the CGL.... The task force substituted the "occurrence" approach now in the CGL ... for the "accident" approach, and it expressly provided that an occurrence included any injury or damage that resulted, not only from an accident, but also from injurious exposure over an extended period. This change adopted the result reached by courts that construed "accident" to include injuries resulting from long exposures.

565 F.Supp. at 1501. In *American Motorists Insurance Co. v. E.R. Squibb & Sons,* 95 Misc.2d 222, 406 N.Y.S.2d 658 (Sup.Ct. N.Y.Co.1978), the Hon. Edward J. Greenfield, Justice of the Supreme Court, New York County, engaged in a similar discussion.

Great difficulty was encountered in many situations because of the rather vague definition of the word "accident".... *It was precisely because of recurring disputes as to whether the word "accident" referred to the act or*

*the injury resulting from the act that the new definition was adopted.*

95 Misc.2d at 224, 406 N.Y.S.2d at 660 (emphasis added). *See also* Comment, *Liability Insurance for Insidious Disease: Who Picks Up the Tab?*, 48 Fordham L.Rev. 657, 667 n. 50 (1980); Tinker, *Comprehensive General Liability Insurance— Perspective & Overview*, 25 Fed'n Ins. Counsel Q. 217, 239–40 (1975).

Plaintiff argues that the Pre-Revision Policies should be interpreted so that coverage would be triggered when "exposure" to DES occurred during a policy period. This interpretation would be consistent with the growing body of case law that has adopted such an approach for diseases with long latency periods. *See Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034 (D.C.Cir.1981) (asbestosis), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982); *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir.1980) (asbestosis), *modified on rehearing*, 657 F.2d 814 (6th Cir.), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); *Porter v. American Optical Corp.*, 641 F.2d 1128 (5th Cir.), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981) (asbestosis); *Eli Lilly & Co. v. Home Insurance Co.*, 482 N.E.2d 467 (Ind.1985) (DES); *Commercial Union Insurance Co. v. Sepco Corp.*, 765 F.2d 1543 (11th Cir. 1985) (asbestosis); *ACandS, Inc. v. Aetna Casualty & Surety Co.*, 764 F.2d 968 (3d Cir.1985) (asbestosis); *Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976 (5th Cir.1985) (silicosis); *Vale Chemical Co. v. Hartford Accident & Indemnity Co.*, 340 Pa.Super. 510, 490 A.2d 896, *leave to appeal granted*, 508 Pa. 603, 499 A.2d 576 (1985) (DES); *Lac D'Amiante du Quebec, Ltee. v. American Home Assurance Co.*, 613 F.Supp. 1549 (D.N.J.1985) (asbestosis); *Allstate Insurance Co. v. Colonial Realty Co.*, 121 Misc.2d 640, 468 N.Y.S.2d 800 (Sup.Ct. Kings Co.1983) (lead poisoning). Defendant contends that those of its policies which provided coverage for product liabilities for "accidents" occurring during a policy year were triggered when an injury manifested itself, not when an insured's drug is used by a claimant. *See Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.*, 682 F.2d 12 (1st Cir.1982), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983) (asbestosis); *American Motorists Insurance Co. v. E.R. Squibb & Sons, Inc.*, 95 Misc.2d 222, 406 N.Y.S.2d 658 (Sup.Ct.N.Y.Co.1978) (DES).

Commercial Union asserts several additional reasons to deny plaintiff's motion. First, it contends summary judgment is inappropriate because plaintiff has not produced true and complete copies of the alleged Pre-Revision Policies. A declaration of Commercial Union's duty to defend against DES-related claims is premature because plaintiff has not identified the specific claims and lawsuits involved. Defendant claims that plaintiff has offered no evidence demonstrating the injuries that are alleged in the lawsuits and claims for which coverage is sought, and when the alleged injuries could have occurred. Further, defendant has asserted several affirmative defenses to plaintiff's coverage claims. Finally, defendant claims that it is inappropriate for the Court to interpret the policy provisions before defendant has had the opportunity to obtain discovery bearing upon policy interpretation. For the reasons presented below, plaintiff's motion is granted in part and denied in part.

### Legal Discussion

■ On a motion for summary judgment, the court's purpose is not to try issues of fact, but rather to determine whether or not there are material issues of fact to be tried. *Meiri v. Dacon*, 759 F.2d 989, 993 (2d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). In the event judgment is not rendered for all the relief asked, the court may ascertain what material facts are actually controverted and direct such further proceedings in the action as are appropriate. *See* Fed.R. Civ.P. 56(d). Under Rule 56(d), the unsuccessful movant can succeed in limiting the number of facts that need to be proved at

trial. For the purposes of this motion the parties have agreed that New York law should apply.

Defendant claims that the Court may not render a declaration of its duty to defend under the policies unless plaintiff specifically identifies the claims asserted in the underlying lawsuits. The Court must then compare the allegations of the complaint in each of such underlying actions to the provisions of the policy sought to be enforced. *See Rochester Woodcraft Shop, Inc. v. General A.F. & L.A.C.*, 35 A.D.2d 186, 187, 316 N.Y.S.2d 281, 283 (4th Dep't 1970); *Goldberg v. Lumber Mutual Casualty Insurance Co.*, 297 N.Y. 148, 77 N.E.2d 131 (1948).

While such a procedure may be appropriate in the context of a single specified claim, in the context of mass tort litigation, the case law recognizes that this is an impractical and unnecessary approach. *See, e.g., Keene Corp. v. Insurance Co. of North America*, 667 F.2d at 1040; *American Home Products*, 565 F.Supp. at 1499–1500. In *Keene Corp.*, the insurer argued that issues of coverage could be raised only in the context of each of the numerous underlying lawsuits. The Court rejected this argument holding that scrutiny of the specific claims was unnecessary since the Court had before it "the terms of the insurance policies and the facts of the particular types of diseases whose coverage is at issue." 667 F.2d at 1040.

Judge Soafer adopted a similar approach in *American Home Products*, where he issued a declaratory judgment that the insurer had the duty to defend the insured against any suit in which the complaint could be read to permit proof of an injury during the policy period. He refused, however, to grant a declaratory judgment as to whether the insurer's duty to defend existed in each of the underlying product liability suits. 565 F.Supp. at 1500. Judge Sofaer held that the duty to defend existed until the insurer had " 'confined the claim' in any underlying case by demonstrating that coverage will be denied even if the case succeeds." *Id.*

This showing must be made in each underlying litigation, and is an inappropriate issue to resolve in a declaratory judgment action, where the underlying cases are not before the Court. So long as the allegations in a case could conceivably result in liability covered by a policy at issue, [the insurer] must defend.

*Id.* The complaint in the instant action sets forth the types of lawsuits and claims for which coverage is at issue in this action. The relevant facts pertaining to DES-related disease and injury are not in dispute. *Cf. Commercial Union Insurance Co. v. Sepco Corp.*, 765 F.2d 1543, 1546 (11th Cir. 1985) (asbestosis-related diseases). Although neither party has presented any medical evidence concerning the etiology of DES-related diseases and injuries, the Court takes judicial notice of the nature and character of the effects of DES on a fetus in utero as presented by the medical literature and discussed in the case law. *See Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 7–8 (2d Cir.1983); *Vale Chemical Co. v. Hartford Accident & Indemnity Co.*, 340 Pa.Super. 510, 490 A.2d 896, 898 n. 3, 900 (Pa.Super.1985). Accordingly, the Court may determine the issues presented on this motion without scrutinizing the allegations in each of the underlying actions.

*Duty to Defend*

■ The duty to defend is broader than the duty to indemnify. *Olin Corp. v. Insurance Co. of North America*, 603 F.Supp. 445, 448 (S.D.N.Y.1985). The two obligations are "separate and distinct." *Spoor-Lasher Co. v. Aetna Casualty & Surety Co.*, 39 N.Y.2d 875, 876, 386 N.Y.S.2d 221, 222, 352 N.E.2d 139, 140 (1976); *see also Servidone Construction Corp. v. Security Insurance Co.*, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441, 444 (1985). The duty to defend clause at issue in this case must, under New York law, be construed broadly to provide coverage. *American Home Products*, 565 F.Supp. at 1499; *Goldberg v. Lumber Mutual Casualty Insurance Co.*, 297 N.Y.

148, 77 N.E.2d 131 (1948); 31 N.Y.Juris. § 1324 (1963).

An insurance company has a duty to defend, even meritless suits, "so long as they could conceivably result in a liability covered by the policy" but "has no duty to defend claims which may have merit, but for which liability coverage does not exist because injury occurred outside the policy period."

*Olin Corp.*, 603 F.Supp. at 448, *quoting American Home Products*, 565 F.Supp. at 1499. Only where "there is no possible factual or legal basis upon which the insurer might eventually be held obligated to indemnify the insured" may the insurer be relieved of the obligation to defend. *Travelers Indemnity Co. v. Highland*, 90 A.D.2d 891, 891, 456 N.Y.S.2d 516, 517 (3d Dep't 1982), *motion for leave to appeal dismissed*, 58 N.Y.2d 607, 460 N.Y.S.2d 1026, 447 N.E.2d 86 (1983).

As described by Judge Sofaer in *American Home Products*, 565 F.Supp. at 1501, and Justice Greenfield in *American Motorists Insurance Co.*, 95 Misc.2d at 224, 406 N.Y.S.2d at 660, the "accident" approach of the Pre-Revision Policies created uncertainty in the courts as to whether or to what extent the standard policy was meant to cover liability for diseases caused by DES. This uncertainty indicates that the policies issued to Burroughs are ambiguous as to whether coverage is triggered by manifestation during the period of the policy, by injury that occurs in scientific fact long before it becomes manifest, *see, e.g., Tomnitz v. Employers' Liability Assurance Corp.*, 343 Mo. 321, 121 S.W.2d 745 (1938); *American Home Products*, 748 F.2d at 766 ("a real but undiscovered injury, [may be] proved in retrospect to have existed at the relevant time"), or by mere ingestion of an unsafe drug.

The parties have presented to the Court for consideration reasonable interpretations of the relevant language pertaining to the "trigger" of coverage. Defendant urges the Court to recognize the manifestation theory case since this approach was adopted by the only New York case to address these concerns in the context of DES litigation. *See American Motorists Insurance Co. v. E.R. Squibb & Sons*, 95 Misc.2d 222, 406 N.Y.S.2d 658 (Sup.Ct.N.Y. Co.1978). But, the precedential value of *American Motorists* to this case is questionable since that court did "not consider the difficult question of whether coverage should include ... injuries occurring during the term which do not become discovered until some time later." *Schulteis v. Centennial Insurance Co.*, 108 Misc.2d 725, 727 n. *, 438 N.Y.S.2d 687, 689 n. * (Sup.Ct. Queens Co.1981). Also, "courts that have accepted the manifestation theory have invariably done so in extending, rather than restricting, the coverage of an ambiguous policy." *American Home Products*, 565 F.Supp. at 1495. *See also Emons Industries v. Liberty Mutual Fire Insurance Co.*, 481 F.Supp. 1022, 1027 (S.D.N.Y.1979) (*American Motorists* not "dispositive" of this issue).

In the event the Court were to accept defendant's proposed construction of the term "accident," it still appears that plaintiff would prevail in many of the underlying actions. Defendant suggests that the term "accident" means something happening "by chance," something "unexpected," such as "an unexpected medical development ... of an unfavorable or injurious nature."[2] *See also Aetna Casualty & Surety Co. v. General Time Corp.*, 704 F.2d 80, 82 (2d Cir.1983). Even under this definition plaintiff would prevail since the medical literature indicates that in many cases, injury occurs at the time of ingestion or exposure to DES. At the least, a plaintiff in an underlying action would be able to present to a jury expert medical witnesses who would testify that to a reasonable degree of medical certainty DES causes "unfavorable or injurious" physiological

---

**2.** The fact that some of the Pre-Revision Policies provide coverage for "occurrences" as opposed to "accidents" does not alter the analysis, except to the extent that use of the term "occurrence" has been construed to provide broader coverage than the term "accident." *See Newmont Mines Ltd. v. Hanover Insurance Co.*, 784 F.2d 127, 135–36 (2d Cir.1986).

changes at the time of ingestion. Defendant also attempts to suggest that plaintiff contends that all individuals who ingest or are exposed to DES are injured. This misconstrues the thrust of the exposure theory, which is not that each ingestion or exposure to DES results in bodily injury, but rather that every DES-related injury results from ingestion or exposure to DES. *Cf. Commercial Union Insurance Co. v. Sepco,* 765 F.2d 1543, 1546 (11th Cir.1985).

■ Although it appears to the Court that it is improbable that defendant ultimately will prevail on this issue, it will be necessary to conduct further discovery bearing upon policy interpretation before the Court may declare that the coverage of the policies in issue is triggered by exposure to DES as opposed to manifestation of a disease or sickness caused by ingestion or exposure to DES. *Schering Corp. v. Home Insurance Co.,* 712 F.2d at 9 (summary judgment cannot be granted where the opposing party "propounds a reasonable conflicting interpretation of a material disputed fact").

Such an ambiguity, however, does not preclude the Court from determining the duty to defend on this motion. Where there are plausible, yet varying, constructions given to a policy which arise from ambiguities therein, it cannot be said as a matter of law that there is no factual or legal basis upon which an insurer might eventually be held liable to indemnify under the policy. *Travelers Indemnity Co. v. Highland,* 90 A.D.2d 891, 891, 456 N.Y. S.2d 516, 518 (3d Dep't 1982). To the extent there is an ambiguity in the relevant policy provisions, the ambiguity, at least for the purposes of the obligation to defend, must be resolved against the insurer. *Brook Shopping Center, Inc. v. Liberty Mutual Insurance Co.,* 80 A.D.2d 292, 294, 439 N.Y.S.2d 10, 12 (1st Dep't 1981); *see also American Home Assurance Co. v. Firestone,* 74 A.D.2d 720, 721, 425 N.Y. S.2d 683, 684 (4th Dep't 1980) (cognizant that the duty to defend is broader than the duty to indemnify, ambiguity construed against insurer and in favor of the duty to defend). In *Emons Industries v. Liberty Mutual Fire Insurance Co.,* 481 F.Supp. 1022 (S.D.N.Y.1979), the Court ordered the insurer to defend "even though there may be some dispute as to whether 'bodily injury' ... resulted when the DES was ingested (1947 through 1965) or when the claimant contracted a cancerous or pre-cancerous condition (at various points after the birth of the female offspring)." *Id.* at 1026.

Application of these principles to this case leads the Court to conclude that Commercial Union should be obligated to defend each lawsuit against Burroughs in which the complaint could be read to permit proof, or does not exclude the possibility, of ingestion or exposure to DES during any policy period. Commercial Union should bear the costs of defense, in every case brought against Burroughs for damages caused by DES, from the time each case is brought, until and unless Commercial Union confines a particular plaintiff's claim so as to exclude the possibility of a recovery for which Commercial Union has provided insurance. Whether Commercial Union has so confined any particular claim shall be determined by the court before which each such case is brought, based upon the facts developed in each litigation. *American Home Products,* 748 F.2d at 764 n. 1.

■ Commercial Union should also defend the so-called derivative claims brought against Burroughs by the grandchildren and spouses of DES-exposed individuals. Whether Burroughs ultimately is held responsible for these derivative claims depends upon whether a jury in a particular case determines that such injuries were proximately caused by ingestion or exposure to DES. Commercial Union therefore should defend these claims until it confines a particular plaintiff's claims so as to exclude the possibility that such injuries were caused by an accident that occurred during a policy period.

This holding is consistent with the well-settled rule of law in property damage cases that insurance coverage extends to

losses that begin during a period of coverage, but continue to develop after a policy's expiration. *American Home Assurance Co. v. Libbey-Owens-Ford Co.*, 786 F.2d 22 (1st Cir.1986). *Keene Corp. v. Insurance Co. of North America*, 667 F.2d at 1046; *Snapp v. State Farm Fire & Casualty Co.*, 206 Cal.App.2d 827, 24 Cal.Rptr. 44 (1962), *modified on other grounds en banc*, 60 Cal.2d 816, 36 Cal.Rptr. 612, 388 P.2d 884 (1964); *Kissel v. Aetna Casualty & Surety Co.*, 380 S.W.2d 497, 509 (Mo.Ct. App.1964); *California Union Insurance Co. v. Landmark Insurance Co.*, 145 Cal. App.3d 462, 193 Cal.Rptr. 461, 468–69 (1983); *Harman v. American Casualty Co.*, 155 F.Supp. 612, 613 (S.D.Cal.1957). In other words, coverage extends beyond the expiration of the policy where "the fortuitous peril which materialized during the term of the policy was still active." *Snapp v. State Farm Fire & Casualty Co.*, 24 Cal.Rptr. at 46, 388 P.2d 884.

> Once the contingent event insured against has occurred during the period covered, the liability of the carrier becomes *contractual* rather than *potential* only, and the sole issue remaining is the extent of its obligation, and it is immaterial that this may not be fully ascertained at the end of the policy period.

*Id.* (emphasis in original). Although this rule generally has been applied in cases involving property damage, such as where damages are caused by fire, ground movement and termite infestation, the rational is equally applicable in cases of latent injuries caused by exposure to toxic substances. *Keene Corp.*, 667 F.2d at 1046; *American Home Products*, 565 F.Supp. at 1498 ("strong analogy"); *But see Newmont Mines Ltd. v. Hanover Insurance Co.*, 784 F.2d 127, 136 (2d Cir. 1986) (business purposes of liability and property damages policies contrasted).

Defendant argues against this result, contending that resolution of the duty to defend with regard to one claimant does not resolve whether a defense must also be extended to other claimants suffering separate injuries. This argument fails to account for the language of the Pre-Revision Policies which provides that with regard to products liabilities, all injuries "arising out of one lot of goods or products ... shall be construed as arising out of one accident." Furthermore, case law with regard to coverage limitations holds that policies which extend coverage on the basis of occurrences rather than claims, are "not intended to gauge coverage on the basis of individual accidents giving rise to claims, but rather on the underlying circumstances which resulted in the claim[s] for damages." *Champion International Corp. v. Continental Casualty Co.*, 546 F.2d 502, 505–06 (2d Cir.1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977);[3] *see Newmont Mines, supra*, at 134–38; *Michigan Chemical Corp. v. American Home Assurance Co.*, 728 F.2d 374, 379 (6th Cir. 1984); *Appalachian Insurance Co. v. Liberty Mutual Insurance Corp.*, 507 F.Supp. 59, 63 (W.D.Pa.1981), *aff'd*, 676 F.2d 56, 63 n. 16 (3d Cir.1982). So long as the subsequent injury may be considered a consequence of the first, it may be considered part of the same "accident." *Cf. Newmont Mines, supra*, at 137.

This result may be justified as well on an alternate ground. The pertinent policy language provides that Commercial Union is required "to pay on behalf of the insured *all* sums which the insured shall become legally obligated to pay as damages." (Emphasis added.) Injuries suffered by the grandchildren and spouses of DES victims

---

**3.** The distinction between the term "accident" and the term "occurrence" observed by the Court in *Champion Int'l*, 546 F.2d at 506 n. 3, is not relevant here. The distinction was raised in the context of insuring for products liability "arising from breach of contract as well as liability for damages caused by accident." *Stauffer Chem. Co. v. Ins. Co. of N. America*, 372 F.Supp. 1303, 1307–08 (S.D.N.Y.1973). The *Champion* Court applied the reasoning of the *Stauffer* decision to support its own discussion contrasting the use of the term "occurrence" instead of the term "claim." 546 F.2d at 506 n. 3. *See also Hartford Acc. & Ind. Co. v. Wesolowski*, 33 N.Y.2d 169, 172–73 & n. 1, 350 N.Y.S.2d 895, 899 & n. 1, 305 N.E.2d 907, 910 & n. 1 (1973) ("occurrence" compared to "accident").

are of a type that flow from the consequences of the DES-caused injuries suffered by the mothers and wives. Burroughs ultimately could be held legally obligated to pay compensation to the grandchildren and spouses as well.

It has been held that an insurance policy obligating the insurer to pay any loss for liability for bodily injuries also includes liability for consequential damages. See 8 Appleman, Insurance Law and Practice, § 4893 (1962); *United States Fidelity & Guaranty Co. v. Shrigley*, 26 F.Supp. 625, 628 (W.D.Ark.1939). *Commercial Union Insurance Co. v. Gonzalez Rivera*, 358 F.2d 480, 484 & n. 4 (1st Cir.1966) (identical policy language); *cf. Aetna Casualty & Surety Co. v. General Time Corp.*, 704 F.2d 80, 83 (2d Cir.1983) (property damage); *American Home Assurance Co. v. Libbey-Owens-Ford Co.*, 786 F.2d 22 at n. 12 (1st Cir.1986); *Fox v. Employers' Liability Assurance Corp.*, 239 A.D. 671, 268 N.Y.S. 536 (4th Dep't 1934); *Tulchinsky v. Public Service Mutual Casualty Insurance Corp.*, 245 A.D. 382, 282 N.Y.S. 944 (2d Dep't 1935) (per curiam); 8A J. Appleman & J. Appleman, *Insurance Law & Practice*, § 4893, at 54, 59 (rev. ed. 1976).

At this juncture, therefore, Commercial Union's duty to defend Burroughs against derivative claims, like its duty to defend against claims by persons who allege injury from exposure to DES, is triggered at the time of the DES ingestion from which such claims arise. This result is appropriate not because the Court has determined that coverage is triggered by exposure to DES, but rather because the ambiguity in the policy does not permit the Court to conclude that "there is no factual or legal basis upon which" defendant might eventually be required to indemnify plaintiff. *Travelers Indemnity Co.*, 90 A.D.2d at 891, 456 N.Y.S.2d at 517.

Finally, defendant argues that summary judgment cannot be rendered on the issue of the duty to defend, citing *Schering v. Home Insurance Co.*, 712 F.2d 4, 10 (2d Cir.1983), *reversing*, 544 F.Supp. 613 (E.D.

N.Y.1982), and *Olin Corp. v. Insurance Co. of North America*, 603 F.Supp. 445 (S.D.N.Y.1985). These cases are distinguishable, however, since in *Schering* the District Court granted summary judgment construing both the duty to defend and the duty to indemnify provisions of the policies in plaintiff's favor. As already explained, the ambiguity present in the Pre-Revision Policies makes it unnecessary for the Court to interpret the actual meaning of the policies in order to rule on this motion. In *Olin*, the Court denied plaintiff's summary judgment motion since plaintiff did not seek a declaration of rights, but rather plaintiff sought to recover the actual costs it incurred in defending DDT products liability suits. Resolution of such issues required the Court to determine in each underlying case whether coverage was triggered. Here, in contrast, plaintiff seeks only a declaration of rights under a contract; plaintiff does not seek to recover amounts already spent in defending individual lawsuits. Accordingly, neither *Schering* nor *Olin* preclude this Court from granting Burroughs the relief it seeks on this motion.

*Documentary Evidence*

In order for plaintiff to establish a duty to defend, it must prove the terms and conditions of the policies under which the alleged duty arises. *Emons Industries v. Liberty Mutual Fire Insurance Co.*, 545 F.Supp. 185, 188 (S.D.N.Y.1982). Commercial Union claims that Burroughs has failed to meet this burden.

In support of its partial summary judgment motion, Burroughs has submitted to the Court numerous pieces of documentary evidence regarding the policies in issue. These documents include copies of the complete policies for the years 1952–53 and 1964–67, certificates of insurance, letters discussing coverage, letters discussing renewal of coverage, portions of policies, letters referring to claims for products liabilities during relevant years, endorsements, excess policies that refer to Commercial Union's primary coverage, and the minutes

of Burroughs' board of directors' meetings evidencing the company's initial decision to procure products liability insurance in 1949. Neither party has been able to produce complete policies or even copies of the policies for all the years in question. Apparently, each party has destroyed the documents as part of their general document retention policies, thus making it necessary for Burroughs to resort to secondary evidence to prove coverage for many of the years in question.

Fed.R.Evid. 1002 provides that production of the original document is required in order to prove the contents of a writing. Rule 1004, which governs the admissibility of secondary evidence to prove the contents of a writing when the original is unavailable, provides in pertinent part as follows:

> The original is not required, and other evidence of the contents of a writing ... is admissible if—
>
> (1) *Originals lost or destroyed.*—All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.

Plaintiff bears the burden of producing the original, "a copy of the entire contract, or at the least, proffering an explanation for its absence." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 65 (3d Cir.1984) (citing Rules 1002, 1003, 1004). Here, plaintiff has not proffered an explanation for its inability to produce the originals or duplicates of the originals other than to state that it responded to Commercial Union's First Set of Interrogatories and "produced to it all of the non-privileged documents in its possession that might bear on the existence and terms of the Pre-Revision Policies, including the documents plaintiff has obtained from the files of its brokers, Johnson & Higgins." Second Supplemental Affidavit of Thomas F. Curnin, Esq., sworn to on March 18, 1985, ¶ 4. Since a "diligent but unsuccessful search and inquiry" has been made, the Court is satisfied that Burroughs has proved loss or destruction of the documents. *See* J. Weinstein & M. Berger, 5 *Weinstein's Evidence,* ¶ 1004(1)[05] at 1004–18 (1983) (quotation omitted).

■ Having surmounted the initial hurdle with respect to proving the contents of a writing by the use of secondary evidence, plaintiff may prove the existence and contents of the policies "by any kind of secondary evidence." *Id.* ¶ 1004[01] at 1004–4. Defendant is entitled to attack the sufficiency of the secondary evidence, but this attack "goes not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve." *Id.* at 1004–5. Defendant has attacked plaintiff's proffer for only certain years for which plaintiff alleges it had obtained products liability coverage from Commercial Union. Specifically, Commercial Union claims that the copy of the policy produced for the years 1952–53 lacks all of the endorsements and does not include the limits of liability. This objection does not provide a sufficient basis for the Court to discredit plaintiff's proof in its entirety. Moreover, New York law places the burden of proving any exclusions on the insurance company. *Emons Industries v. Liberty Mutual Fire Insurance Co.,* 545 F.Supp. 185, 189 (S.D.N.Y. 1982), *citing Sincoff v. Liberty Mutual Fire Insurance Co.,* 11 N.Y.2d 386, 230 N.Y.S.2d 13, 183 N.E.2d 899 (1962); *American Fidelity Fire Insurance Co. v. Pardo,* 32 A.D.2d 536, 299 N.Y.S.2d 521, 523 (2d Dep't 1969); *Danerhirsch v. Travelers' Indemnity Co.,* 202 A.D. 207, 195 N.Y.S. 110 (1st Dep't 1922). Furthermore, policy limits are immaterial to the duty to defend. 7C J. Appleman & J. Appleman, *Insurance Law & Practice,* § 4691, at 256 (Berdal ed. 1979) (costs of defense are in addition to policy limits). Defendant has similarly criticized the versions of the policies produced for the years 1964–67, contending that the policy jackets are missing, that not all of the endorsements have been produced and that some of the pages are stamped specimen. But, the available portions of these policies indicate coverage for products lia-

bility for personal injuries and for the duty to defend.

■ In support of its contention that plaintiff is not entitled to summary judgment with regard to the quality of its documentary proof, defendant relies upon *Keene Corp. v. Insurance Co. of North America,* 1981 Fire & Casualty Cases 712 (D.D.C.1981). In that case, the court granted summary judgment to the insurer, holding that the insured had failed to produce evidence that products liability coverage had been purchased from the defendant, Pennsylvania Manufacturers' Association Insurance Company. In addition, the insurer had introduced "secondary testimonial and documentary evidence [which] indicated that products coverage was not included." *Id.* at 713. Commercial Union also relies upon *Emons Industries,* 545 F.Supp. 185 (S.D.N.Y.1982), where the Court denied cross-motions for summary judgment on the basis that it was unusual for a business to have purchased products liability coverage from the particular insurer as part of a general liability insurance program, *id.* at 187, and because plaintiff's evidence only suggested the existence of products liability coverage for the years in question, without introducing direct and contemporaneous proof that such coverage indeed existed. *Id.* at 189.

In this case, plaintiff has submitted contemporaneous documents demonstrating that it had obtained products liability coverage by way of endorsement to its existing general liability policies effective December 22, 1949. Plaintiff's documentary proof also establishes year by year, except for the years 1955–57, the continued existence of products liability coverage from defendant. For the years 1955–56 and 1956–57, plaintiff has submitted proof of the existence of continued general liability coverage and that defendant was its insurer during this period. Plaintiff contends that this raises an inference that products liability coverage continued for the years in question. A survey conducted by plaintiff's broker in 1976 concerning Burroughs' products liability insurance history has been

submitted to support this conclusion. Defendant claims that the documents evidencing coverage for the year 1962–63 refer to public liability coverage, but this ignores the fact that the Certificate of Insurance submitted by plaintiff plainly states that it pertains to Burroughs' "U.S.A. Products Liability." Finally, defendant has not contested that it had a duty to defend Burroughs under each of the Pre-Revision Policies, nor has it even hinted that evidence of the type introduced in *Keene* and *Emons* exists in this case.

"Once a moving party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. General Motors Corp. (Motors Holding Div.),* 758 F.2d 839, 840 (2d Cir.1985). While this statement is apropos of defendant's attempts to controvert the documentary evidence plaintiff has submitted on the issue of the existence of the policies, the Court is constrained to deny plaintiff's motion at this time. Defendant claims that it has not had the opportunity to inspect the files of plaintiff's broker, Johnson & Higgins, to satisfy itself that an exhaustive search for any and all documentation relating to the policies at issue has been conducted. The basis for this claim is plaintiff's announced intention to oppose the taking of extensive depositions with regard to this motion. However, in February 1985, plaintiff's counsel notified counsel for Commercial Union that Johnson & Higgins' New York office had been instructed to make available to counsel "all files, microfilm or other documentation that might be of some relevance to this matter." Letter from Thomas F. Curnin, Esq. to Hon. Peter K. Leisure (Oct. 31, 1985). As of the time of that writing, plaintiff's counsel was not aware of a request made by defendant's counsel for production from Johnson & Higgins. The Court is not aware of any order that has been entered precluding defendant from seeking this discovery, which distinguishes

this case from *Schering v. Home Insurance Co.*, 712 F.2d 4 (2d Cir.1983), where, in a similar case, the Second Circuit reversed a district court decision granting plaintiff summary judgment on the basis that discovery had improvidently been stayed pending decision on the motion. *Id.* at 10. In any event, defendant claims it must inspect the files from all pertinent offices of Johnson & Higgins, not just those of the New York office. Letter from William G. Ballaine, Esq. to Hon. Peter K. Leisure (Nov. 13, 1985). Defendant also seeks to depose document custodians at Burroughs and Johnson & Higgins regarding the search for relevant documents and facts bearing on coverage claims. *Id.*

There is no question that extensive discovery could be taken to plumb the depths of murky issues such as contract interpretation, parol evidence, negotiations, course of dealing and trade practices. This opinion demonstrates that for the purposes of this motion, the majority of such discovery would be irrelevant. However, for sixty days the Court will refrain from issuing an order granting plaintiff's motion for summary judgment in order to permit Commercial Union to inspect the files of Johnson & Higgins at all "pertinent" locations and to present to the Court whatever newly discovered documentary evidence it deems relevant to the issue of the existence and contents of products liability policies issued by Commercial Union covering Burroughs for the years 1949 to 1967.

SO ORDERED.