Zurich-American Insurance Companies, Appellant-Respondent, v Atlantic Mutual Insurance Companies et al., Doing Business as The Atlantic Companies, Respondents-Appellants.

First Department, August 18, 1988

APPEARANCES OF COUNSEL

*Ignatius John Melito* of counsel *(S. Dwight Stephens* with him on the brief; *Siff, Rosen & Parker, P. C.,* attorneys), for appellant-respondent.

*Howard R. Cohen* of counsel *(Sidney Rosen* with him on the brief; *Bower & Gardner,* attorneys), for respondents-appellants.

**OPINION OF THE COURT**

SULLIVAN, J.

In this coverage dispute between insurers which brings into play the well-settled principle that an insurer's duty to defend is broader than its duty to indemnify, Zurich-American Insurance Companies seeks a declaration that Atlantic Mutual and Centennial Insurance Company (collectively known as Atlantic) are obligated to join it in providing a defense to their mutual insureds, Theresa Bents and Illse Lorenz, in six actions pending in Supreme Court, Bronx County.

In August 1984, six identical actions were commenced against the Westchester Tremont Community Day Care Center; the Westchester United Methodist Church, at whose premises the day-care services were provided; the Reverend Nathaniel Grady, pastor of the church; and Bents and Lorenz, who worked in the day-care center on the church premises. The actions are based on the alleged sexual abuse of the infant plaintiffs in early 1984 while they were at the day-care center. According to the complaints, the church utilized its premises to operate a day-care center, in which Grady, Bents and Lorenz, who were agents, servants, and/or employees of the center and the church, all were involved.

Zurich had issued to the Human Resources Administration of the City of New York (HRA) a liability policy which, for the period in question, covered the day-care center and its employees while acting in the scope of their employment. Atlantic had, for a similar period, issued liability policies covering the church and "any employee of the [church] while acting within the scope of his duties as such". Along with claims of noncovered intentional acts, each of the six complaints also alleges,

*inter alia,* that between January and June 1984 the infant plaintiffs suffered injury as a result of the negligence of Grady, Bents and Lorenz, thus triggering coverage under the liability policies issued by Atlantic as well as under Zurich's policy.* With regard to their duty to defend, the Atlantic policies contain the following standard language: "[T]he company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient".

Zurich undertook the defense of the day-care center, and Atlantic undertook the defense of the church. In addition, and in view of the allegations that they had acted as employees of the day-care center, Zurich also undertook the defenses of Grady, Bents and Lorenz, providing each with separate counsel in view of the apparent conflicts of interest. Zurich thereafter requested Atlantic to share the defense obligation with respect to Grady, Bents and Lorenz since the complaints also alleged that they had acted as employees of Atlantic's insured, the church. Atlantic never responded.

Grady's personal attorney also wrote to Atlantic to renew a demand that Grady had previously made personally to assume his defense in these actions as a coinsurer with Zurich. Again Atlantic failed to respond. Thus, Zurich alone has incurred substantial legal fees in defending the three individual defendants in the underlying actions. As of March 1986 it had expended $50,033.99 in defense costs, and that figure has since increased significantly.

Zurich thereupon commenced this action for a declaration as to Atlantic's joint defense obligation. It did not seek any declaration concerning the obligation, if any, that it or Atlantic might have to indemnify Grady, Bents and Lorenz. Zurich moved for summary judgment, asserting that Atlantic's duty to defend Bents and Lorenz was established as a matter of law by the allegations of the underlying complaints. Zurich argued that it was entitled to a declaration that Atlantic is obligated to share in all the costs and expenses incurred by it in defending Grady, Bents and Lorenz in the underlying lawsuits; and to an award of damages against Atlantic as reim-

---

* Grady was the subject of a criminal prosecution and was subsequently convicted of sexual abuse. Bents and Lorenz were never criminally charged.

bursement for one half of the moneys previously expended by it in defending those defendants in the underlying actions.

In a cross motion for summary judgment Atlantic sought a declaration that it did not have any duty to share in the defense of Bents and Lorenz since they had, in their answers to the underlying complaints, denied being agents or employees of the church. Atlantic did for the first time concede, however, that it was obligated to share the costs of defending Grady, presumably because he, unlike Bents and Lorenz, had not denied being an employee of the church in his answers.

The motion court granted Zurich's motion only to the extent that Atlantic conceded that it should share the costs of defending Grady, and otherwise dismissed the action, holding that the denials by Bents and Lorenz in the underlying actions raised issues of fact as to whether they had acted as employees of the day-care center or the church, and that such issues of fact could not be resolved in the declaratory judgment action. The court concluded that Atlantic's defense obligation would be determined, not by the allegations of the complaints, but by the outcome of the underlying actions. Thus, in its view, the insurers' duty to indemnify would determine their relative duties to provide a defense. Furthermore, although the declaratory judgment action affected only Zurich's and Atlantic's rights with respect to their relative obligations to pay for defense costs, the court, *sua sponte*, determined that the action should be dismissed since the day-care center and the church, as named insureds, and Bents and Lorenz, as putative insureds, were necessary parties who should have been joined. All three of the premises upon which the court based its decision are faulty.

At the outset, it should be noted that only the scope of Atlantic's duty to defend is involved here. This case does not involve, as the motion court mistakenly concluded, the scope of Atlantic's concurrent but independent duty to indemnify. Moreover, as even Atlantic concedes, the defendants in the underlying actions are not necessary parties, since the declaration sought by Zurich will not impair or reduce the available defense coverage afforded by it, and under which it is currently defending Bents and Lorenz and the day-care center. Nor will such a declaration impair or reduce the available defense coverage afforded by Atlantic to its named insured, the church.

Atlantic contends that, notwithstanding the allegations

of the underlying complaints that Bents and Lorenz were negligent in the performance of their duties as employees of the church, it is not obligated to defend these defendants because their answers deny the allegation that they were employees of the church. In effect, Atlantic argues, these denials foreclose the possibility of any finding of liability in the underlying actions based upon the negligence of Bents and Lorenz as employees of the church. Suffice to say, merely to state the proposition is to demonstrate its fallacy.

The motion court, on the other hand, adopted a different view. It held that the duty to defend of Zurich and Atlantic, respectively, depended on their ultimate duty to indemnify, which will not be resolved until the trial of the underlying actions. This was error. The positions of Atlantic and the motion court are contrary to the overwhelming body of controlling authority in this State.

One of the most elementary tenets of insurance law holds that an insurer's duty to defend is broader than its duty to indemnify, and is triggered, irrespective of the insurer's ultimate duty to indemnify, whenever the allegations of a complaint fall within the scope of the coverage provided. *(Villa Charlotte Bronte v Commercial Union Ins. Co.,* 64 NY2d 846; *Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304; *Ruder & Finn v Seaboard Sur. Co.,* 52 NY2d 663; *International Paper Co. v Continental Cas. Co.,* 35 NY2d 322.) As the court stated in *Seaboard Sur. Co. v Gillette Co.:* "The duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be * * * The duty is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions. Rather, the duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased." (64 NY2d, at 310, *supra.)*

The allegations of the underlying complaints must be taken at face value. Even though false or groundless, the allegations trigger the insurer's duty to defend as long as they raise a theory of liability within the scope of the policy's coverage. "[T]he question is not whether the complaint can withstand a motion to dismiss for failure to state a cause of action. Nor is the insured's ultimate liability a consideration. If, liberally

construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be". *(Ruder & Finn v Seaboard Sur. Co., supra,* 52 NY2d, at 670.) Each of the complaints in the underlying actions alleges that Bents and Lorenz were negligent while acting within the scope of their employment by the church, Atlantic's insured. Since these allegations are within the scope of its coverage, they trigger Atlantic's duty to defend Bents and Lorenz, irrespective of whether the allegations are true or whether, on the basis of such allegations, liability is ever established against Bents and Lorenz.

In refusing to join Zurich in defending Bents and Lorenz, Atlantic has apparently concluded that they were not in fact acting as employees of the church with respect to the allegations of the complaints. Even if Atlantic's conclusion were correct—and the eventual disposition of that issue is certainly unclear—it would not, as a matter of law, obviate Atlantic's broad duty to defend. In *Colon v Aetna Life & Cas. Ins. Co.* (66 NY2d 6), the court held that, as long as the issue was unresolved, an allegation of permissive use in the underlying complaint obligated the insurer to provide a defense to the driver, even though the driver was a stranger to the policy, the insurer's own investigation established correctly that the driver had stolen the vehicle, and the jury in the underlying action ultimately determined that the driver did not have permission to operate the vehicle. Similarly, in *Green Bus Lines v Consolidated Mut. Ins. Co.* (74 AD2d 136), the court, in holding that the insured was entitled to a defense based on a broad reading of the allegations of the complaint even though the insurer had independent proof which indicated that a policy exclusion was applicable, wrote: "Although it appears that the insurer is in possession of certain proof concerning the happening of the accident, it may not adduce such proof to controvert or resolve ambiguities in the allegations of the underlying complaint so as to establish the applicability of the automobile maintenance exclusion * * * While this rule is harsh it is in accord with the general principle that where the allegations of the underlying complaint plead a case which potentially comes within the coverage of the policy, the insurer must provide a defense" *(supra,* at 144-145).

In the instant case, Atlantic does not even purport to have proof which establishes that, contrary to the allegations of the complaints, Bents and Lorenz were not acting as

employees of the church. Instead, it merely relies on the answers of these two defendants denying the allegations in the underlying actions that they were acting as employees or agents of the church. Since, as has been demonstrated, the law is clear that the duty to defend is determined by the allegations of the complaint, not the answer (7C [rev vol] Appleman, Insurance Law and Practice § 4683.01, at 60; *Carolina Aircraft Corp. v American Mut. Liab. Ins. Co.,* 517 F2d 1076, 1077), Atlantic's position in this regard is meritless. In *American Home Assur. Co. v Weissman* (79 AD2d 923), for example, an attorney who promoted a syndicate investing in second mortgages was sued for malpractice and fraud after a default on one of the mortgages. His malpractice insurer claimed, *inter alia,* that it did not have to provide the attorney with a defense because in his answer to the underlying complaint he had denied the allegation that he had acted as an attorney with respect to the transaction. The record was insufficient to determine whether the insured had in fact acted as an attorney. Notwithstanding the attorney's denial in this answer, this court held that since the complaint alleged that he was acting as an attorney, the duty to defend was triggered. Similarly, in *Kincaid v Simmons* (66 AD2d 428), the insurer was obligated to defend its insured under the broad allegations of the complaint even though the insured admitted to the insurer that his acts fell within a policy exclusion. The court noted, "It would be premature and prejudicial to disclaim since facts are clearly stated in the complaint which indicate that an act or omission of [the insured] (or an employee) may be a proximate cause of the injuries. Clearly this requires [the insurer] to defend without regard to ultimate liability" *(supra,* at 431).

Since Atlantic's policies specifically state that coverage is extended to employees of the church for occurrences during the policy period, the allegations that the infant plaintiffs' injuries were caused by the negligence of Bents and Lorenz while acting for the church are squarely within the insuring language of the Atlantic policies and trigger its obligation to defend. Whether Grady, Bents and Lorenz are ultimately found to have been acting within the scope of employment by the church, the day-care center, or both, or whether they are in fact found liable in negligence is irrelevant at this juncture in determining Atlantic's duty to defend.

The answers of Bents and Lorenz merely pose factual and legal issues as to whether they were, indeed, agents, servants

or employees of the church, as alleged. Since the issue is complex, its resolution is best left to the underlying proceedings in which the interplay between Grady, Bents and Lorenz with respect to the day-to-day operations of the day-care center and church will undoubtedly be explored. For example, if Grady, the pastor and head of the church, supervised Bents and Lorenz in running the day-care center or involved them in the alleged sex abuse of the children, they might be deemed Grady's, and vicariously, the church's employees, servants or agents. Such a finding of fact would lead to an ultimate determination of whether Bents or Lorenz were servants, agents or employees of the church, the day-care center or both. Moreover, their denials notwithstanding, Bents and Lorenz may not be aware of the factual nuances and niceties upon which the determination of the legal relationship between them and the church may turn. For example, depending on the tasks they performed and who controlled them, Bents and Lorenz may have been special employees of the church, while still being general employees of the day-care center. (See, e.g., Brooks v Chemical Leaman Tank Lines, 71 AD2d 405; Doboshinski v Fuji Bank, 78 AD2d 537.) Finally, because of the notoriety of Grady and his alleged acts and the resulting criminal charges that were brought against him, it is not surprising that Bents and Lorenz would want to disassociate themselves from him by denying they were church employees. That concern, no matter how legitimate, however, does not have any bearing on the issue of insurance coverage.

The dissent places great reliance on the absence of a request by Bents and Lorenz of Atlantic for a defense. This argument, which not even Atlantic has advanced, is irrelevant. Zurich has already assumed their defense under the terms of the policy it issued. Thus, any formal request for a defense to which the insureds (that they are not a named insured, also cited by the dissent, is a distinction without a difference) are clearly entitled has been obviated by Zurich's compliance with the provisions of its policy. In any event, no such request is required to trigger Zurich's rights to reimbursement of Atlantic's share of the defense costs. If several insurers bind themselves to the same risk and one insurer pays the whole loss, the one so paying has a right of action against his coinsurers for a ratable proportion of the amount paid by him because he has paid a debt which is equally and currently due by the other insurers. (See, e.g., Cosmopolitan Mut. Ins. Co. v Lumbermen's Mut. Cas. Co., 20 NY2d 145;

*Continental Ins. Co. v Commercial Union Ins. Co.,* 27 AD2d 333.) That is precisely the case here. Finally, in arguing that this declaratory action is premature, the dissent persists in the view that the issue of which insurer should bear the cost of the defense expenses is inextricably interwoven in the question of the ultimate responsibility to indemnify for any liability imposed in the underlying actions. This argument ignores the principle that the obligation to defend is an independent, albeit concurrent, obligation to the duty to indemnify. While the duty to indemnify awaits further exploration and disposition, the duty to defend has fully matured.

Thus, we reject the argument that since, based on their answers, Atlantic will not have any ultimate obligation to indemnify Bents and Lorenz, it, thus, likewise does not have any duty to defend them. The sole issue before us is whether the underlying complaints allege any facts which potentially bring the action within the scope of Atlantic's coverage. Since the complaints clearly do so, Atlantic should be compelled to honor its defense obligation. Zurich is not, at this time, however, entitled to reimbursement of one half of its expenses in defending Bents and Lorenz, as sought, since the reasonable value of its attorneys' services presents an issue of fact, and, in any event, the extent of its recovery in that regard is controlled by the provisions of the parties' respective "other insurance" clauses, as to which this record is unclear.

Accordingly, the judgment should be reversed, on the law, with costs and disbursements, the complaint reinstated and Zurich's motion for summary judgment granted to the extent of declaring that defendants are obliged to share with Zurich in the costs of defending Bents and Lorenz in the underlying actions.

MURPHY, P. J. (dissenting). The facts are fairly and comprehensively set forth in the majority opinion, as is the law applicable in those situations where an insured seeks to compel an insurer to undertake its defense in a liability action. This, however, is not a situation in which the insured has requested a defense. Rather, here, one insurer, Zurich, is suing other insurers, Atlantic and Centennial, to contribute monetarily to a defense which Zurich is already providing and will continue to provide to parties indisputably covered under its policy of insurance.

It is, of course, true that an insurer's duty to defend is broader than its duty to indemnify *(Seaboard Sur. Co. v*

*Gillette Co.,* 64 NY2d 304, 310; *International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 326; *Lionel Freedman, Inc. v Glens Falls Ins. Co.,* 27 NY2d 364, 368), the reason being that the purchase of liability insurance would be often rendered pointless if the insured were nevertheless left exposed to the considerable financial costs of defending an action until such time, if ever, as it was conclusively determined that there existed a duty on the insurer's part to indemnify. An insurer is, therefore, independently obligated to afford its insured a defense regardless of whether the scope of the policy is ultimately found to embrace the conduct or omissions of the insured, provided that the allegations of the complaint in the underlying liability action, liberally construed, bring the action within the protection purchased by the insured. *(Seaboard Sur. Co. v Gillette Co., supra,* at 310; *Ruder & Finn v Seaboard Sur. Co.,* 52 NY2d 663, 669-670.) A declaratory judgment action, having as its principal and usually dispositive focus the allegations in the underlying complaint, provides the insured an expeditious means of enforcing his right to a defense.

As plaintiff Zurich concedes, however, there is no question in this case of an insured being denied a defense. The only question is whether Zurich will be forced to bear the entire cost of the defense or is entitled to contribution from Atlantic and Centennial. That is a question which need not and indeed ought not be answered on an expedited basis by means of a declaratory judgment; it can and should await determination of the relevant factual issues in the liability action. It is there that the issues respecting the relationship between the two defendants, Bents and Lorenz, and the named insured under the policy issued by present defendant insurers Atlantic and Centennial, i.e., Westchester United Methodist Church, are most appropriately resolved. As has been stated, "the policy in this State has been to deny the declaratory judgment where the matter in dispute can be determined in the basic negligence action but to permit the action when the dispute is such that it depends on matters outside of the negligence action or will not arise in the negligence action as a part of the lawsuit." *(Nationwide Mut. Ins. Co. v Dennis,* 14 AD2d 188, 189; *Allstate Ins. Co. v Santiago,* 98 AD2d 608; *see also, Everlast Sporting Goods Mfg. Co. v Aetna Ins. Co.,* 23 AD2d 641; *Cordial Greens Country Club v Aetna Cas. & Sur. Co.,* 41 NY2d 996.)

I do not question the obligation of an insurer to defend a named insured or party claiming a relation to the named

insured entitling him or her to coverage under the policy issued the named insured. What is questioned is whether someone who is not a named insured, and who not only fails to allege any relationship with the named insured, but, as here, affirmatively denies such relationship, is entitled to a defense for which he has made no demand.

Clearly, it is not the purpose of a declaratory proceeding to create coverage where none exists, or is even claimed to exist by a putative insured. Indeed, there is usually no question of coverage in declaratory proceedings brought to compel a defense since the plaintiff therein is almost always the named insured; as the threshold issue of coverage is usually uncontested, the only question ordinarily presented is whether the scope of the admitted coverage encompasses the allegations in the underlying complaint. In the rare declaratory action to compel a defense brought by someone other than the named insured, there at least exist allegations by the claimed beneficiary of the coverage of some relation to the named insured which would bring the claimant within the contemplated coverage. Moreover, in those cases where someone other than the named insured has been afforded a defense, the situation has been one in which the putative insured would have otherwise gone undefended or would have had to bear the costs of defending on his own, a circumstance which might in certain situations adversely affect the named insured. *(See, Colon v Aetna Life & Cas. Ins. Co.,* 66 NY2d 6, 9-10, discussed *infra.)*

The single case cited by the majority in which a party other than a named insured was found to have been entitled to a defense—even though it was ultimately determined that the putative insured was not in fact covered under the policy of insurance—is *Colon v Aetna Life & Cas. Ins. Co. (supra).* There, the plaintiff, Colon, sought from the insurer, Aetna, and was denied, a defense, claiming that he was covered under the omnibus clause of Aetna's automobile insurance policy; he claimed he had been given permission by the named insured to use the vehicle he had been driving at the time of the accident. Aetna had disclaimed coverage relying exclusively on its own investigation. In upholding Colon's right to a defense, the court relied essentially upon policy considerations, as it had to since it had already been determined in the context of the then completed liability action that Colon was not in fact an insured. The court observed that the effective defense of the driver was in the insured's interest, and that

insureds would be best protected if the burden of providing a defense was placed initially on the insurer instead of relegating the insured to an action upon the policy *(supra,* at 9-10).

Plainly, the present case is distinguishable from *Colon (supra).* Here the putative insureds, Bents and Lorenz, have made no demand for a defense, and, while represented by independent counsel retained by their insurer Zurich have actually denied facts upon which their coverage under the policies issued by Atlantic and Centennial would necessarily be based. This is a far cry from *Colon* where there was not only a demand for a defense but allegations vigorously pursued by the putative insured to the effect that he was within the coverage of the policy there at issue. The denial of coverage in this case does not rest upon the insurers' possibly self-serving investigation, as it did in *Colon,* but upon the sworn assertions of the very parties who would be most interested in coming within the coverage if that were a realistic possibility. It is also worth noting that the very strong presumption of permissive use and, therefore, of coverage *(Leotta v Plessinger,* 8 NY2d 449, 461; *Carter v Travelers Ins. Co.,* 113 AD2d 178, 180 [Sullivan, J.]) present in *Colon* does not obtain here where there is absolutely no operative presumption that Bents and Lorenz were employees of defendant insurers' named insured. Indeed, apart from the bare alternative allegations in the liability action complaint there exists no presently discernable reason to suppose that Bents and Lorenz will eventually be found to come within the coverage of defendant insurers' policies. Finally, and perhaps most significantly, in light of the fact that the putative insureds herein are already being provided a defense by their admitted insurer, Zurich, the various policy rationale invoked in *Colon* to extend the benefits of coverage to one who as it turned out was not in fact an insured, are manifestly inapplicable.

If the facts eventually determined in the course of the liability action establish that defendant insurers are in fact coinsurers of Bents and Lorenz then it would, of course, be appropriate to permit Zurich to seek contribution from them for the costs of the defense. But until such time as it is established that defendants are coinsurers, or at least that there is, notwithstanding the contrary allegations in their answer, some bona fide claim by Bents and Lorenz to that effect, a claim for contribution, which is really all that plaintiff in the present action asserts, is premature. It is also

premature to declare that defendants are not coinsurers because, as noted, the factual issue upon which that determination depends is yet to be litigated, as it should be, in the liability action.

Accordingly, the judgment of the Supreme Court, New York County (Andrew Tyler, J.), entered December 2, 1987, which adjudged and declared on consent that defendant Atlantic Mutual Insurance Company was obliged to share equally in the defense of Reverend Nathaniel Grady, but which dismissed the action insofar as it sought a declaration as to defendants' obligation to share in the costs of defending Theresa Bents and Illse Lorenz in the underlying actions, should be affirmed.

CARRO and MILONAS, JJ., concur with SULLIVAN, J.; MURPHY, P. J., and ROSS, J., dissent in an opinion by MURPHY, P. J.

Judgment, Supreme Court, New York County, entered on December 2, 1987, reversed, on the law, the complaint reinstated and Zurich's motion for summary judgment granted to the extent of declaring that defendants-respondents-appellants are obliged to share with Zurich in the costs of defending "Bents" and "Lorenz" in the underlying actions. Plaintiff-appellant-respondent shall recover of defendants-respondents-appellants $75 costs and disbursements of the appeal and cross-appeal.