The STATE OF NEW YORK, Plaintiff,

v.

Walter T. BLANK, Abalene Pest Control Service, Inc., and Orkin Exterminating Company, Inc., Defendants.

Walter T. BLANK and Abalene Pest Control Service, Inc., Third–Party Plaintiffs,

v.

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, New England Marine Contractors, Inc., Capital Mutual Insurance Co., and National Union Fire Insurance Co. of Pittsburgh, Pa., Third–Party Defendants.

CAPITAL MUTUAL INSURANCE CO., Fourth–Party Plaintiff,

v.

NEW YORK MUTUAL UNDERWRITERS, Commercial Mutual Insurance Co., f/k/a/ the Cooperative Fire Insurance Company of Catskill, New York, Security Mutual Fire Insurance Co., and Sterling Insurance Co., Fourth–Party Defendants.

No. 88–CV–163.

United States District Court, N.D. New York.

May 5, 1993.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, NY, for plaintiff; Maureen Leary, Dean S. Sommer, Asst. Attys. Gen., of counsel.

King & Spaulding, Atlanta, GA, for defendant Orkin Exterminating Co., Inc.; Charles H. Tisdale, Jr., Patricia T. Barmeyer, of counsel.

Ogletree Deakins Nash Smoak & Stewart, Schenectady, NY, for defendant Orkin Exterminating Co., Inc.; Franklin H. Boldberger, of counsel.

Whiteman Osterman & Hanna, Albany, NY, for defendants & third-party plaintiffs Abalene Pest Control Serv., Inc. and Walter T. Blank; Margaret J. Gillis, Jean Gerbini, Philip H. Gitlen, of counsel.

Sheft Wright & Sweeney, New York City, for third-party defendant National Union Fire Ins. Co. of Pittsburgh, PA; David Holmes, Peter I. Sheft, of counsel.

Smith Sovik Kendrick Schwarzer & Sugnet, Syracuse, NY, for third-party defendant National Union Fire Ins. Co. of Pittsburgh, PA; William Sugnet, of counsel.

Hancock and Estabrook, Syracuse, NY, for third-party defendant and fourth-party plaintiffs Capital Mut. Ins. Co.; Alan J. Pierce, of counsel.

Bouck, Holloway, Kiernan and Casey, Albany, NY, for fourth-party defendant New York Mut. Underwriters; Thomas O'Connor, Michael J. Lonergan, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

New York State commenced this action in February, 1988, pursuant to the Comprehensive Environmental Response, Liability and Compensation Act of 1980 ("CERCLA"), various New York State environmental statutes, and state common law. The State alleges in pertinent part that between 1972 and 1986, defendants/third-party plaintiffs Abalene Pest Control Service ("Abalene") and Walter T. Blank illegally caused hazardous contamination of certain land located in Saratoga County, New York. Abalene and Blank impleaded, among others, National Union Insurance Company and Capital Mutual Insurance Company ("Capital Mutual"), their respective insurance carriers, seeking a defense and indemnification from the State's

suit. Capital Mutual subsequently commenced a fourth-party action against, among others, New York Mutual Underwriters ("NYMU"), claiming that NYMU also provided Blank with insurance coverage during the periods of contamination and therefore should contribute to Capital Mutual's defense and indemnification. This court has jurisdiction pursuant to 42 U.S.C. § 9613 (CERCLA) and 28 U.S.C. § 1331 (federal question).

During the five years in which this case has been pending, the court has become quite familiar with the parties and their positions. The court has previously issued two lengthy decisions in this case and has adjudicated numerous other disputes, almost all of which related to the extent to which the insurers must defend Abalene and Blank. See New York v. Blank, No. 88–CV–163, 1991 WL 208883, 1991 U.S.Dist. LEXIS 14582 (N.D.N.Y. Oct. 9, 1991) (hereinafter "Blank II"); New York v. Blank, 745 F.Supp. 841 (N.D.N.Y.1990) (hereinafter "Blank I"). Presently before the court are new issues regarding the duty to defend, brought before the court in Capital Mutual's motion for summary judgment against NYMU and NYMU's cross-motion for summary judgment against Capital Mutual. Both motions relate solely to the fourth-party action. The remaining defendants in the fourth-party action are not parties to this motion.

## I. BACKGROUND

The court sets forth only those facts that are necessary for consideration of these motions; reference is made to prior decisions issued in this case for a more complete recitation of the facts. On October 10, 1991, this court rejected for the third time Capital Mutual's argument that it has no duty to indemnify or defend Blank in the State's underlying action. Capital Mutual had argued that it should be excused from the case due to the existence of a "pollution exclusion clause" in Blank's policy which excludes from coverage liability arising from occurrences of contamination.[1] This court rejected Capital Mutual's

---

1. The Capital Mutual policy contained the standard industry pollution exclusion clause, which states:

It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalies,

arguments because the incidents alleged by the State rationally may be said to fall within the "sudden and accidental" exception to the pollution exclusion clause, thus invoking Capital Mutual's duty to defend. The court further determined that Capital Mutual's duty to indemnify must be determined at the trial on the merits, not during a summary judgment motion. *See generally Blank II,* 1991 WL 208883, 1991 U.S.Dist. LEXIS 14582; *Blank I,* 745 F.Supp. 841.

Shortly after the court rendered its October 10, 1991 decision, Capital Mutual filed (with leave of the court) this fourth-party action against NYMU. Capital Mutual contends that NYMU had provided Blank with comprehensive insurance coverage from 1972 through 1975, time periods during which Blank allegedly contaminated the subject land. In fact, argues Capital Mutual, NYMU's insurance policy provided Blank with coverage which was nearly identical to that provided by Capital Mutual. In light of the apparently concurrent coverage and the fact that Blank had not sought indemnification or defense costs from NYMU, Capital Mutual commenced this fourth-party action, seeking contribution from NYMU for 50% of Capital Mutual's indemnification costs and 50% of the costs that Capital Mutual incurs in defending Blank in the underlying action.

Capital Mutual now moves for summary judgment of the fourth-party action, as asserted against NYMU, on grounds that NYMU can present no evidence to refute Capital Mutual's proof that NYMU issued insurance coverage to Blank during the relevant time periods and that the coverage applies to the State's underlying claims. As mentioned above, none of the other fourth-party defendants are party to this motion. Capital Mutual acknowledges that its motion is made more difficult—if not more intriguing—by both parties' professed inability to locate the NYMU insurance policy that allegedly provided Blank the claimed coverage. NYMU contends that if that such a policy ever existed, then it would have been lost or destroyed pursuant to the company's regular

business practice. While acknowledging the absence of the subject policy, Capital Mutual argues that it nonetheless is able to rely upon circumstantial evidence to irrefutably prove the existence and terms of the coverage. Thus, contends Capital Mutual, it is entitled to summary judgment of the fourth-party action. NYMU cross-moves for summary judgment on grounds that the terms of any alleged policy would be such that NYMU would not be required to provide Blank with a defense or indemnification from the State's claim, even if Capital Mutual were able to prove that coverage existed in the first place.

## II. DISCUSSION

### A. *Capital Mutual's motion for summary judgment*

■ Capital Mutual's inability to produce the alleged NYMU insurance policy does not by itself preclude it from prevailing on this motion. It is well settled that a party seeking recovery under an insurance policy need not produce the actual policy to prevail in a suit for coverage. *See, e.g., Boyce Thompson Inst. for Plant Research v. Insurance Co. of N. Am.,* 751 F.Supp. 1137, 1140 (S.D.N.Y. 1990); *Burroughs Wellcome Co. v. Commercial Union Ins. Co.,* 632 F.Supp. 1213, 1222–23 (S.D.N.Y.1986); *see also, e.g., Bituminous Cas. Corp. v. Vacuum Tanks, Inc.,* 975 F.2d 1130, 1132 (5th Cir.1992). In fact, this court has visited the issue of lost or destroyed insurance policies on two previous occasions, and in both cases recognized that an insured can prove the existence and terms of a policy by circumstantial evidence, without ever producing the subject policy. *New York v. Union Fork & Hoe Co.,* No. 90–CV–688, 1992 WL 107363 *4, 1992 U.S.Dist. LEXIS 6749 *11 (N.D.N.Y. May 7, 1992) ("If [the insured] can circumstantially prove the existence and terms of a valid policy, then it can satisfy the threshold requirement of its prima-facie case"); *Colonial Tanning Corp. v. Home Indemnity Co.,* 780 F.Supp. 906, 922 (N.D.N.Y. 1991) ("under the circumstances, the fact that

toxic chemicals, liquid or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, *but this exclu-*

*sion does not apply if such discharge, dispersal, release or escape is sudden and accidental.* See *Blank I,* 745 F.Supp. at 845 (emphasis added).

[the insured] has not come forth with complete copies of the policies issued to it by [the insurer] is not a sufficient basis for denying its partial summary judgment motion"). Of course, proving a prima-facie case of the existence and terms of a lost policy is not easy, nor should it be. Capital Mutual's burden is significantly heightened in this summary judgment context because it must establish *beyond dispute* that a policy existed as well as the terms of the missing policy. *See* Fed.R.Civ.P. 56(e); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). If there is any doubt as to the existence and/or terms of the coverage, then the court must deny summary judgment. *Union Fork & Hoe Co.,* No. 90–CV–688, 1992 WL 107363 *4–5, 1992 U.S.Dist. LEXIS 6749 *15 (citing cases).

### 1. Diligent Search

■ Even before presenting its circumstantial evidence to prove the terms of a missing policy, however, Capital Mutual must first satisfy the court that it has made a " 'diligent but unsuccessful search and inquiry' " for the missing document. *Burroughs Wellcome Co.,* 632 F.Supp. at 1223 (quoting 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 1004(1)[05], at 1004–18 (1983)). This preliminary requirement stems from Fed. R.Evid. 1004, which precludes a party from relying upon secondary evidence to prove the terms of an original when the party loses or destroys the documents in bad faith. *See also* Fed.R.Civ.P. 56(e) (in reviewing summary judgment motion, court may only consider evidence which would be admissible at trial) Courts have construed this rule in the summary judgment context as requiring the party seeking to recover upon a lost policy to initially establish that it has searched in good faith for the document, but to no avail. *Burroughs Wellcome Co.,* 632 F.Supp. at 1223 (citation omitted).

■ Capital Mutual has clearly satisfied this threshold burden. Through the affidavits of its counsel, Alan J. Pierce, Capital Mutual has detailed the measures it took in searching for the NYMU policy (or policies) that covered Blank from 1972 through 1974. Specifically, counsel avers that he sent NYMU interrogatories, requests for document production, and requests for admissions, each of which revealed that the policies likely existed but that NYMU—the issuer of the policies—was itself unable to locate them. Pierce Aff. (2/12/93) ¶ 9. Notably, in response to two separate interrogatories NYMU asserted that "[i]f a policy was issued as alleged by [Capital Mutual], it would have been issued by NYMU and any copies of it which may have remained in NYMU's possession would have been destroyed in the regular course of its business." *Id.* ¶ 9(f) & exh. "4" at ¶¶ 7, 9. Capital Mutual's counsel also attempted to contact the Ed Yates Insurance Agency, a Poughkeepsie, New York insurance agency that apparently issued the NYMU policy to Blank (*see infra*), in an effort to locate the missing policy. Pierce Aff. (2/12/93) ¶ 18. Counsel's endeavors were fruitless, however, because the agency is no longer in existence and the telephone company has no information on an individual named Ed Yates in Poughkeepsie. *See id.*[2]

This court is convinced that Capital Mutual has expended a good-faith, diligent effort to locate the alleged policies and that any policy that NYMU may have issued to Blank is lost or destroyed. It is difficult to fathom how Capital Mutual can be expected to produce a copy of a twenty year old policy when even the company that issued the policy does not have a copy. In any event, it is clear that the independent efforts undertaken by Capital Mutual to locate the missing NYMU policies were at least as thorough as those described in *Burroughs Wellcome Co.,* 632 F.Supp. at 1223, and *Colonial Tanning Co.,* 780 F.Supp. at 922, in which the parties seeking coverage similarly established through affidavits that they had conducted

---

**2.** Counsel also represented to the court at oral argument that he inquired of Blank's counsel as to the existence of an NYMU policy. Blank's counsel apparently searched Blank's records and was unable to recover an NYMU policy. Of course, at that point Blank had no motivation to locate an NYMU policy, since this court had ruled by then that Blank was covered by Capital Mutual.

diligent searches. Inasmuch as Capital Mutual has likewise provided affidavits detailing its futile efforts to locate the policy, and that those efforts (discovery of NYMU, attempts to contact Blank's insurance broker) parallel those which were found sufficient in *Burroughs* and *Colonial Tanning,* the court concludes that Capital Mutual has satisfied the threshold "diligent search" requirement.

### 2. Existence and Terms of Policy

■ The court turns next to Capital Mutual's evidence concerning the existence and terms of the alleged policy. Capital Mutual has proffered the affidavit of Serge A. Bervy, Sr., an insurance broker licensed to conduct business in New York State. Bervy attests that he served as Blank's insurance broker from 1976 through 1987. Bervy Aff. (2/5/93) ¶ 3. While his affidavit might initially seem irrelevant—after all, he was not Blank's broker during the years in which Blank was allegedly covered by NYMU insurance— upon closer review it becomes clear that Bervy has some knowledge of Blank's coverage from 1972 through 1975. Bervy has produced from his file a copy of a Declarations Page to a NYMU insurance policy held by Blank. *Id.* exh. "A". The Declarations Page indicates that Blank and his spouse were the named insureds of a policy issued by NYMU and that the effective dates of the policy were from February 28, 1972 through February 28, 1975. Among the properties listed on the Declarations Page as being covered by the policy was the Saratoga County parcel that is the subject of this litigation. *See id.* Based upon his knowledge as an experienced insurance broker, Bervy asserts that a Declarations Page is an accurate indicator of the coverage provided in the corresponding policy. *See id.* According to Bervy, the only exception to this presumption of accuracy would arise when the coverage had been cancelled prior to the policy's expiration date. *Id.* ¶ 6.

The Declarations Page, of course, speaks only to the existence of a policy; it provides no insight into the policy's terms. To prove the terms of the policy, Capital Mutual relies upon NYMU's concessions in its responses to interrogatories. In those responses, NYMU

stated that "[i]f the insurance policy alleged by [Capital Mutual] was issued, then it was issued by NYMU alone and without any participation of the other name fourth-party defendants." Pierce Aff. (2/12/93) ¶¶ 9(c), (d) & exh. "5". In addition, a sample policy provided by NYMU in response to Capital Mutual's request for production of documents contains virtually the same pollution exclusion clause that appeared in Blank's Capital Mutual policy. Significantly, NYMU does not contend that the exclusion clause in the policy it produced is distinguishable in any material respect from the exclusion contained in the Capital Mutual policy. NYMU's concession as to the similarity between the two clauses is significant because, as mentioned above, this court has already construed that language as requiring insurers (including Capital Mutual) to defend and indemnify Blank in the State's action. *See generally Blank II,* 1991 WL 208883, 1991 U.S.Dist. LEXIS 14582.

When considered altogether, Capital Mutual's evidence establishes a prima-facie case showing that a policy existed and that the policy contained terms which require NYMU to defend and indemnify Blank in the State's action. The Declarations Page shows that a NYMU policy existed from 1972 to 1975, and NYMU's responses to Capital Mutual's discovery demands show the terms of those policies. Combined, this evidence indicates that Capital Mutual has successfully dispatched its burden of establishing a prima facie case of the existence and terms of a governing insurance policy. *Cf. Union Fork & Hoe Co.,* 1992 WL 107363 *4, 1992 U.S.Dist. LEXIS 6749 *11 (citing *Boyce Thompson Inst.,* 751 F.Supp. at 1140 (party seeking coverage must establish the existence, execution, delivery, and contents of the policy)).

■ With Capital Mutual having presented evidence to support a prima face case showing of the existence and terms of the policy, the burden shifts to NYMU to show that a factual dispute exists as to Capital Mutual's ability to prevail on the merits. In this regard, NYMU "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, once Capital Mutual presents competent evidence supporting each element of its prima-facie case, NYMU must "come forward with '*specific facts* showing there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (emphasis added) (quoting Fed.R.Civ.P. 56(e)). NYMU's burden is not overly burdensome when one considers that its evidence need be neither dispositive, nor even persuasive; so long as NYMU presents some evidence which "generates uncertainty as to the true state of any material fact," it can defeat Capital Mutual's motion. *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir.1983) (citing *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980)). Although its burden is light, NYMU nevertheless shoulders the minimal burden of proffering at least *some* evidence showing that a factual dispute exists. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 886–90, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990).

■ The court has reviewed NYMU's opposition to Capital Mutual's motion and concludes that NYMU has not carried its burden. Rather than present any evidence suggesting the existence of a factual dispute, NYMU chose instead to sit back and criticize the persuasiveness of Capital Mutual's evidence. Stated in procedural terms, NYMU has offered no evidence indicating the presence of a genuine dispute as to the existence and terms of the policy. NYMU's primary opposition to Capital Mutual's motion is based upon one person's speculation that Blank or NYMU *might* have cancelled the policy before its expiration, or that the Declarations Page *might* in some other respect be inaccurate. Wege Aff. (3/3/93) ¶ 8. In light of these suggestions, the court searched the record for some tangible evidence to support NYMU's theories, but was simply unable to find any particular facts upon which a trier of fact could rely to support NYMU's speculation. Having failed to present any evidence which arguably contradicts, or at least challenges, the accuracy of Capital Mutual's case, NYMU cannot show the existence of a genuine factual dispute concerning the existence and terms of the policy. *Cf. Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir.1989).

■ NYMU asserts that the evidence proffered by Capital Mutual would be inadmissible at trial and thus cannot support its motion for summary judgment. The argument runs that Capital Mutual's evidence, primarily in the form of affidavits, is not based upon the affiants' first-hand knowledge and therefore cannot be considered by the court in this motion. *See Chandler v. Coughlin*, 763 F.2d 110, 113–14 (2d Cir.1985) (first hand knowledge requirement in summary judgment motions); *McLaughlin v. New York*, 784 F.Supp. 961, 965 (N.D.N.Y.1992) (same). Contrary to NYMU's assertion, all of the evidence tendered by Capital Mutual in this motion is competent. The evidence upon which Capital Mutual most heavily relies, the Declarations Page to Blank's policy, is a document which speaks for itself. Such Declarations Pages are commonly kept in the industry and, according to Bervy, prepared at the time the policy is executed, thus qualifying them as business records. *See* Fed. R.Evid. 803(6); *see also Saks Int'l, Inc. v. M/V Export Champion*, 817 F.2d 1011, 1013 (2d Cir.1987); *Yankee Bank for Finance & Sav., FSB v. Task Assocs., Inc.*, 139 B.R. 71, 79 (N.D.N.Y.1992) (citing cases) (discussing prerequisites to invocation of business records hearsay exception). The trier of fact could properly rely upon the information contained on the Declaration Page to conclude that Blank held NYMU insurance from 1972 to 1975, and NYMU has offered no evidence to refute that. As for proving the terms of the policy itself, Capital Mutual properly relies upon NYMU's concessions in its responses to discovery requests. Inasmuch as NYMU has admitted that if a policy existed, its terms were identical to those contained in the sample policy provided by Capital Mutual, including the pollution exclusion clause, it has removed from dispute the question of whether Capital Mutual can prove the terms of the policy, and summary judgment would be proper. *See* Pierce Aff. (2/12/93) ¶¶ 9(c), (d) & exh. "5".

NYMU next argues that even if one were to assume that the policy existed and that the terms were identical to those alleged by Capital Mutual, summary judgment still would not be warranted because Blank is not eligible for coverage under these terms.[3] NYMU asserts three reasons why Blank would still be ineligible for coverage. Implicit in each of these arguments is NYMU's presumption that if Blank is not eligible to receive coverage under the policy, then Capital Mutual cannot rely upon that policy to receive contribution. The court will discuss NYMU's arguments *seriatim.*

### (a) Pollution exclusion clause

■ The policy which NYMU issued to Blank contained what the parties agree to be a standard pollution exclusion clause. The clause essentially excludes from coverage all occurrences of environmental contamination except those which are "sudden and accidental."[4] Pierce Aff. (2/12/93) exh. "5". If the State's underlying complaint alleges an occurrence that was sudden and accidental, then NYMU must provide Blank with a defense from that suit. *See, e.g., EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.,* 905 F.2d 8, 11 (2d Cir.1990); *Avondale Indus., Inc. v. Travelers Indem. Co.,* 887 F.2d 1200, 1204–05 (2d Cir.1989), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). This duty to defend arises regardless of whether or not the State ultimately proves that sudden and accidental contamination occurred. As this court already explained in *Blank II,*

> the duty to defend and the duty to indemnify are separate and distinct questions of law. The Insurers' duty to defend arises solely on the basis of allegations set forth in the State's complaint in the main action.

So long as the claims *alleged* by the State rationally may be said to fall within the policy coverage, the Insurers must come forward and defend; this is so even if the State's allegations ultimately prove fruitless, thus absolving the Insurers of the duty to indemnify for damages.... [As] [t]his court noted in [*Blank I,*]

> [t]o hold otherwise would be to inform insurance companies that their best course of action is to withhold payment for any defense costs, even in the fact of a court order, wait and see if they have any obligation to indemnify, and then claim that if there is no duty to indemnify, there could never have been any duty to defend. Such, in the opinion of the court, would be patently unfair.

1991 WL 208883 *4, 1991 U.S.Dist. LEXIS 14582 *11–12 (emphasis in original) (citations omitted) (quoting *Blank I,* 745 F.Supp. at 850) (citing *Avondale Indus.,* 887 F.2d at 1204–05; *Servidone Constr. v. Security Ins.,* 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441, 444 (1985)).

■ NYMU contends that it has no duty to defend because the State's complaint does not allege that contamination occurred suddenly and accidently; the State alleges only intentional contamination. Therefore, argues NYMU, it should not be required to defend Blank in the State action. As both parties are aware, this court has already spent considerable time reviewing the assertions in the State's complaint, searching specifically for any allegation that the contamination may possible have occurred suddenly and accidently. The court has issued two lengthy decisions addressing this very issue, both times concluding that the complaint *does* allege the possibility that some of the contami-

---

**3.** As a technical matter, NYMU asserted this argument solely in support of its cross-motion for summary judgment, not in opposition to Capital Mutual's motion. As a practical matter, however, the argument, if valid, would also form a basis for defeating Capital Mutual's motion. Therefore, the court will consider the argument as being asserted in opposition to Capital Mutual's motion, as well.

**4.** NYMU's pollution exclusion clause is contained in an endorsement to the policy, and states:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse of body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental. Pierce Aff. (2/12/93) exh. "5" (section entitled "EXCLUSION (Contamination or Pollution)").

nation was sudden and accidental. *See, e.g., Blank I,* 745 F.Supp. at 847–48 ("portions of the complaint may reasonably be read as alleging sudden and accidental pollution—thereby necessitating the provision of a defense"). This over-burdened federal court emphatically refuses to visit that settled issue a third time.[5] The court instead directs NYMU to both of those decisions, in which the court thoroughly set forth its reasons for why this very argument must be rejected. The court reaffirms its original holding that the State's complaint alleges, *inter alia,* sudden and accidental contamination. Thus, NYMU, like all of the other insurers involved in this case, cannot rely upon the pollution exclusion clause to escape its duty to defend. Finally, to the extent that NYMU also seeks to evade its duty to indemnify, the court relies upon its previous holdings to reject that argument, too:

> Since CERCLA is a strict liability statute, the State need not limit its proof at trial to Abalene's and Blank's alleged intentional acts of contamination; a verdict against Abalene and Blank might be grounded in part upon evidence of accidental contamination. Based on its complaint, the State is seeking recovery for *all* contamination, regardless of intent. *See* Complaint at ¶ 10. By drafting its broad complaint, the State has left open the opportunity to present evidence at trial of unintentional contamination for which the Insurers would have a duty of indemnity. Since neither the Insurers nor this Court can guarantee that evidence of accidental contamination for which the Insurers owe indemnity will not arise at trial, summary judgment is not warranted.

*Blank II,* 1991 WL 208883 *9, 1991 U.S.Dist. LEXIS 14582 *26–27 (citation omitted).

### (b) Timely Notice and Forwarding of suit papers

■ NYMU next argues that it is not required to defend and indemnify Blank be-

cause Blank failed to give prompt written notice of the alleged occurrence as required by the policy. *See, e.g., Olin Corp. v. Insurance Co. of N. Am.,* 743 F.Supp. 1044, 1053–55 (S.D.N.Y.1990) (notification requirements), *aff'd,* 929 F.2d 62 (2d Cir.1991) (per curiam). In so arguing, NYMU once again imputes to Capital Mutual the requirements that Blank would face if he personally sought coverage under the policy.

By imposing upon Capital Mutual the policy's procedural conditions, NYMU essentially treats this fourth-party suit as a subrogation action, with Capital Mutual acting as a subrogee to Blank's rights under the policy. NYMU's implicit presumption that this is a subrogation suit is understandable, because in a subrogation action the insurer—here Capital Mutual—cannot recover unless the insured would have been able to recover had it brought the suit itself. The Second Circuit discussed the prerequisites to a subrogation suit in *Gibbs v. Hawaiian Eugenia Corp.,* explaining:

> Since the insurer-subrogee stands in the shoes of its insured, any defenses that are valid against the insured are also applicable against the insurer. *See Great Am. Ins. Co. v. United States,* 575 F.2d 1031, 1034 (2d Cir.1978) (Subrogation "is an exclusively derivative remedy which depends upon the claim of the insured and is subject to whatever defenses the tortfeasor has against the insured."); 16 [*Couch on Insurance* 2d § 61:212 (Rev.ed. 1983)]. Where the insured has no right of recovery, the insurer has no enforceable right of subrogation. *See Federal Ins. Co. [v. Arthur Andersen & Co.],* [75 N.Y.2d 366] [553 N.Y.S.2d 291 552 N.E.2d 870 (Ct.App. 1990)].

966 F.2d 101, 106 (2d Cir.1992). Relying upon this rule of subrogation, NYMU argues that Blank's failure to file with NYMU a timely notice of the occurrence, and subsequent failure to immediately forward to NYMU all papers relating to the State's suit

---

5. In that regard, counsel to NYMU should be cognizant of the fact that in *Blank II* this court issued sanctions pursuant to Fed.R.Civ.P. 11 based upon certain parties' impermissible attempt to relitigate their duty to defend. While it is true that the "law of the case" doctrine does

not apply here, NYMU's attempt to litigate its duty to defend is nonetheless questionable in light of the very clear manner in which this court has already resolved this issue in not one but two prior occasions.

as required by the policy, precludes Capital Mutual from recovering benefits to which Blank would not himself be entitled. The same defenses that would apply to bar Blank's coverage should bar Capital Mutual's coverage, argues NYMU.

Insofar as NYMU's arguments are based upon principles that govern subrogation suits, the court finds them to be without merit. NYMU's subrogation-type argument is defeated by Capital Mutual's unambiguous representation that it "is not suing as a subrogee of the rights of Walter Blank under [his] insurance policy. Rather, Capital Mutual is suing NYMU pursuant to its legal right to seek contribution from a co-insurer." Pierce Reply Aff. (3/10/93) at 17. At oral argument, the court shared NYMU counsel's concern over whether such a right to contribution—separate and apart from a suit for subrogation—actually exists. After all, one usually thinks of a right to contribution in the context of action between joint tortfeasors, not insurers. Further research has revealed, however, that such a cause of action does indeed exist between co-insurers. To be sure, it is well established in New York that "when several insurers cover the same risk and payment for the loss has been made by one, that carrier has a right to pro rata contribution from other insurers." *Vigilant Ins. Co. v. Employers Ins. of Wausau*, 626 F.Supp. 262, 268 (S.D.N.Y.1986) (citing *American Dredging Co. v. Federal Ins. Co.*, 309 F.Supp. 425, 428 (S.D.N.Y.1970)) (distinguishing subrogation suit from "the right of the insurer who has paid the loss to is assured to pro rata contribution from co-insurers"); *accord Seaboard Shipping Corp. v. Jocharanne Tugboat Corp.*, 461 F.2d 500, 503 n. 3 (2d Cir.1972) (citing cases). Significantly, an insurer may maintain a contribution action against a co-insurer without complying with the formal claim requirements that would be imposed upon the insured. *Zurich–American Ins. Cos. v. Atlantic Mutual Ins. Cos.*, 139 A.D.2d 379, 531 N.Y.S.2d 911, 916 (1st Dep't 1988) (citing cases), *aff'd*, 74 N.Y.2d 621, 541 N.Y.S.2d 970, 539 N.E.2d 1098 (Ct.App.1989).

Since its suit sounds in contribution and not subrogation, Capital Mutual is not bound by the formal claims requirements that Blank would have faced had he sought coverage under the policy. In so ruling, the court adopts the holding set forth by the New York Appellate Division in *Zurich American*. There, the insured similarly sought coverage from only one of its two insurance companies. In ruling that the second insurer must contribute to the coverage, the Appellate Division held that the paying insurer need not comply with the second insurer's "formal request" requirement to trigger its right to contribution of defense costs. 139 A.D.2d 379, 531 N.Y.S.2d at 916. "If several insurers bind themselves to the same risk and one insurer pays the whole loss," wrote the court, "the one so paying has a right of action against his coinsurers for a ratable proportion of the amount paid by him because he has paid a debt which is equally and currently due by the other insurers." *Id.* (citing cases). Similarly, Capital Mutual is entitled to pro rata contribution from NYMU for the costs of defending their common insured, Blank, in the State's action. This is so even though Blank neither filed a claim nor otherwise complied with the policy's perquisites to coverage.

### (c) Apportionment of defense costs

Finally, NYMU urges that even if the court holds that Capital Mutual is entitled to contribution of defense costs, the costs should be equitably allocated so that the burden carried by each insurer bears some relation to the amount of time that it insured Blank *vis-a-vis* Blank's entire insurance coverage. According to NYMU,

ordering the sharing of past and future defense costs on an equal sharing basis is inequitable. Sharing past defense costs with Capital Mutual on this basis would require NYMU to contribute to the defense costs incurred by Capital Mutual in the various "relitigations" of the pollution exclusion issue. To magnify the inequity of such an approach, this would mean that NYMU would have to contribute to the reimbursement of Capital Mutual for the sanctions imposed on Capital Mutual for unnecessary motion practice.

More fundamentally, allocation of defense costs on an equal sharing basis means that NYMU would be reimbursing Capital Mutual for defense costs that might never have been necessary to incur had Capital Mutual prosecuted, perfected and successfully argued an appeal from this Court's original decision and order on the pollution exclusion issue.

NYMU Mem. (3/3/93) at 16–17.

There are a number of flaws in NYMU's argument. First and foremost, even NYMU concedes that "courts in New York and within the Second Circuit are now generally in agreement that defense costs should be divided equally among all of the insurers." *Id.* at 16. In fact, the Second Circuit rejected this very argument in *Federal Ins. Co. v. Cablevision Sys. Dev. Co.,* 836 F.2d 54, 58–59 (2d Cir.1987). *See also, e.g., U.S. Fidelity & Guar. Co. v. Executive Ins. Co.,* 893 F.2d 517, 520 (2d Cir.1990) ("[u]nder New York law, insurers are obligated to contribute in equal shares to defense when two such policies provide primary coverage" (citations omitted)); *Emons Indus., Inc. v. Liberty Mutual Fire Ins. Co.,* 481 F.Supp. 1022 (S.D.N.Y. 1979). The rationale behind this rule seems clear enough; if only one issuer were present, then it would have to provide for the *entire* defense cost, so splitting the cost in equal portions among multiple insurers is the logical way to apportion defense costs when they can be shared. *Federal Ins. Co.,* 836 F.2d at 58. To that end, the court is not persuaded by NYMU's argument that costs should be apportioned according to the insurers' stake in the litigation, since NYMU would have faced paying the entire defense costs but for Blank's coincidental decision to purchase Capital Mutual insurance during the relevant time periods, as well.

With respect to NYMU's contention that its costs may have been lower had Capital Mutual successfully prosecuted an appeal from this court's previous decisions on the pollution exclusion issue, the court finds this argument is wholly devoid of merit. As Capital Mutual correctly notes, those prior decisions were interlocutory orders and as such were not appealable absent the court's certification of the rulings pursuant to 28 U.S.C. § 1292(b) or Fed.R.Civ.P. 54(b). Certification of those decisions would have been inappropriate; the court would not have granted an application for such certification. *Cf. New York v. Amro Realty Corp.,* 936 F.2d 1420, 1423–46 (2d Cir.1991) (discussing standard for certification). Moreover, to accept NYMU's argument would require the court to find that Capital Mutual would likely have succeeded on the merits of an appeal, a conclusion which this court is loathe to draw. With respect to the inequity of sharing Capital Mutual's Rule 11 sanctions, the court notes that those sanctions were imposed against Capital Mutual in particular based upon its improper conduct, and hereby orders that expenditures incurred in paying those sanctions shall not be included in NYMU's duty to contribute.

In short, the court is not swayed by NYMU's argument that equity dictates an apportionment of defense costs other than by equal sharing. The arguments forwarded by NYMU would apply to any case in which multiple insurers provided coverage for the same event, and the Second Circuit and New York courts have already rejected those arguments. *See Federal Ins. Co.,* 836 F.2d at 58–60 (citing cases, and specifically rejecting argument that "general principles of equity" mandate pro rata apportionment based upon policy limits). To rule otherwise would allow NYMU to be unjustly enriched by the fortuitous presence of other insurers in this suit.

### B. NYMU's cross-motion

NYMU has cross-moved for summary judgment on grounds that even if the policy existed and its terms were exactly those proffered by Capital Mutual, NYMU would nonetheless be saved from contributing to the defense due to the presence of the pollution exclusion clause and because Blank, due to his failure to satisfy the formal claim requirements, is himself ineligible for coverage under the policy. As mentioned above, the court considered—and rejected—these arguments in opposition to Capital Mutual's motion for summary judgment. *See supra* pp. 706–08. The court relies upon the same rationale in finding that the arguments do not provide a basis for granting summary

judgment to NYMU. Accordingly, NYMU's cross-motion for summary judgment of the fourth-party action is denied.

### III. CONCLUSION

Capital Mutual's motion for summary judgment of the fourth-party action as asserted against NYMU is granted, and NYMU's cross-motion for summary judgment of the fourth-party action is denied. NYMU is ordered to pay Capital Mutual fifty percent (50%) of past defense expenditures incurred by Capital Mutual in defending Walter Blank in the underlying action, excluding expenditures incurred by Capital Mutual pursuant to the court's October 9, 1991 order imposing sanctions pursuant to Fed.R.Civ.P. 11. New York NYMU is also ordered to pay Capital Mutual fifty percent (50%) of all future defense expenditures incurred by Capital Mutual in the continued defense of Walter Blank in this action.

IT IS SO ORDERED.