**E.R. SQUIBB & SONS, INC., Plaintiff,**

v.

**ACCIDENT AND CASUALTY INSURANCE CO., et al., Defendants.**

**No. 82 Civ. 7327 (VLB).**

United States District Court, S.D. New York.

July 28, 1994.

---

---

**MEMORANDUM ORDER**

VINCENT L. BRODERICK, District Judge.

I

This case concerns controversies between E.R. Squibb & Sons ("Squibb"), a pharmaceutical manufacturer, and a number of its insurers in connection with product liability claims against Squibb arising out of injuries incurred by users of the product diethylstilbestrol ("DES"). By memorandum order dated April 21, 1992, *ER Squibb & Sons v. Accident & Cas Ins Co,* 1992 WL 133899, 1992 US Dist LEXIS 6255 (SDNY1992) (the "1992 order"), I granted partial summary

judgment in favor of Squibb concerning criteria for liability for defense costs. By memorandum order dated May 20, 1994, *ER Squibb & Sons v. Accident & Cas Ins Co*, 853 F.Supp. 98 (SDNY1994) (the "May 1994 order"), I granted partial summary judgment in favor of Squibb concerning several issues regarding liability for underlying indemnification. Familiarity with the 1992 and May 1994 orders is assumed.

Several defendants have moved for reconsideration or clarification of some aspects of the May 1944 order. The motions are granted and the May 1994 order reaffirmed and adhered to in all respects, with the additions which follow.

## II

■ One of the questions raised concerns the relationship between sequential events affecting persons who ingested DES, or their offspring or grandchildren. Under the May 1994 order, any event which leads to ill consequences, whether observed or diagnosed then or later, is an injury, occurrence causing injury or event described by similar language under the relevant policies. The occurrence of an event triggering coverage at one time does not prevent subsequent events from likewise triggering coverage, even though Squibb cannot of course recover twice for the same expenses incurred by it.

■ Each underlying claim must be examined to determine when injury occurred. Any event constituting such injury as discussed in the May 1994 order is sufficient to trigger coverage. Where an event has continuing effects which continue to enhance the ill effects felt by the victim of the injury, as a result of amplification through otherwise normal bodily processes or otherwise, the injury will be continuing so long as such effects continue.

These principles should be sufficiently clear to provide the necessary guidance to the parties without the need for the court to rule on each possible concatenation of events that can be conjured up.

## III

■ Questions have also been raised concerning the relationship between an event triggering coverage as described above and in the May 1994 order, and settlements by initial level insurers. For an excess insurer to be liable to Squibb, the requirements of the insurance policy issued to Squibb by that carrier must be satisfied.

The first requisite for such liability, since all relevant policies contain a requirement of injury (expressed in that way or by similar language), is that injury as defined in the May 1994 order as amplified in part II above must occur during a period of time covered by the excess insurer's policy.

The second requisite is that any initial level insurance required by the excess carrier's policy to have been exhausted be in fact so exhausted. As set forth in the May 1994 order, such exhaustion may occur by payment or settlement, provided the settlement is noncollusive and at arm's length. As indicated in the May 1994 order, it has not been contended that any settlements involved in this case were collusive or other than at arm's length.

■ The two requisites are separate and independent. Any limitation on triggers for coverage agreed upon between one insurer and Squibb for settlement purposes has no effect on whether or not another carrier is liable. By way of illustration, assume that insurer A agrees with Squibb in a settlement that in return for various immediate payments or other consideration, only manifestation or diagnosis will trigger that insurer's coverage. No other insurer, excess or otherwise, can avoid coverage because of this restriction on A's liability in the settlement between Squibb and insurer A.

Where a policy contains a per-claim or per-injured party or other specific deductible apart from an initial deductible to be met prior to any payment by the insurer is necessitated, each such deductible must be satisfied before the carrier involved is required to pay on the claim.

## IV

■ A question has been raised concerning the effect of a provision in an excess carrier's policy that a given amount must be satisfied by underlying insurers or Squibb before the excess carrier is liable. Such provisions create the equivalent of a deductible, which may be satisfied by payment or settlement by other carriers. Until such a deductible is satisfied by either or a combination of these methods or by unreimbursed payments by Squibb if the policy so provides, the excess carrier is not liable to Squibb.

## V

■ Questions have also been raised concerning the allocation between carriers of responsibility where more than one may be liable under the policies involved as interpreted here and in the May 1994 order. Pro rata sharing of cost among carriers is appropriate and called for to avoid placing any carrier at a special disadvantage, perhaps as a settlement device commonly employed in cases involving joint and several liability to induce a rush to settle early in the course of a litigation. See generally *Uniroyal v. Home Ins Co*, 707 F.Supp. 1368, 1392 (EDNY1988); *Stonewall Ins Co v. National Gypsum Co*, 1992 WL 163180 1992 US Dist LEXIS 8898 (SDNY June 24, 1992). This point was also made in the 1992 order.

The pro rata approach does not mean that an insurer's duty to pay another insurer takes priority over its obligation to pay the insured where other insurers are not responsible for a given claim because of exhaustion of policy limits or inapplicability of other policies to the time period involved. See *Continental Casualty Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 655, 593 N.Y.S.2d 966, 974, 609 N.E.2d 506, 514 (1993); *Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 632 F.Supp. 1213 (SDNY1986). For this to occur would exalt resolution of inter-insurer allocation issues over the fundamental purpose of insurance: to protect the insured in return for the premium paid. This would, however, run counter to the purpose of insurance to the interests of both insurers and insureds were the result of such complex calculations be to prevent recovery by an insured where it would otherwise be available under a policy.

In other words, inter-insurer allocation does not permit allocation of losses to the insured (except in the self-evident situation where no insurance is available for the period involved). Putting it another way, payment of claims of the insured must take priority over matters of inter-insurer allocation, even though pro rata allocation is the proper criteria for inter-insurer allocation.

## IV

Although entitled to allocation in connection with disputes among carriers, an insurer cannot decline to pay amounts due under its policy until matters of pro rata allocation among carriers are resolved. To permit this would encourage delay in resolving inter-insurer disputes since each disputing insurer could claim it need not pay until the other's status is determined. Such a procedure would also require adjudication of the status of each carrier before any would be required to pay under the policies involved. This would exalt obfuscation and defeat the contractual obligations undertaken in the policies involved.

Numerous concatenations of circumstances are likely to arise in applying allocation principles. The court cannot usefully attempt to rule in advance on how each of these circumstances is to be resolved. It is the responsibility of the carriers to seek to address these matters in the first instance based on the principles set forth above. In the interim, Squibb need not await resolution of these before pursuing payments from carriers who are directly liable to it. Any contrary approach would defeat the "speedy and inexpensive" as well as the "just" determination of this action as called for by Fed.R.Civ.P. 1.

## V

All litigation—even this one—must at some point come to an end, in the interests of the litigants, the court and the public. To permit further delay in litigation involving matters of such moment would be unwise even were only remote risks of injury rather

than a situation such as that created by DES involved.[1]

This is particularly true where members of the public are affected by the availability or nonavailability of insurance to cover liability of a manufacturer for injuries caused by nationally distributed pharmaceutical products. Further clarifications could doubtless be articulated with respect to the May 1994 order and also its interpretation here. Were the full implications of the principles set forth here to be described as they apply to each variation extant in this case, the result would end with a multi-volume "encyclopedia of law and procedure or else with plain exhaustion." Llewellyn, "Meet Negotiable Instruments," 44 Colum.L.Rev. 298, 322 (1944).

To the extent this case is not settled or an agreement reached for binding alternate dispute resolution by October 15, 1994, any party may move for final declaratory, injunctive or monetary judgment or such combination of these as appropriate. No further applications for clarification of this or prior orders in this case will be considered except in that context.

SO ORDERED.

---

**1.** See *Westwood v. Cohen,* 838 F.Supp. 126 (SDNY1993); *Imperial Chemical Industries, PLC v. Barr Laboratories,* 795 F.Supp. 619, 22 U.S.P.Q.2d 1906 (SDNY1992), *judgment but not opinion vacated by stipulation of parties pursuant to* 991 F.2d 811 (Fed.Cir.1992).