E.R. SQUIBB & SONS, INC., Plaintiff,

v.

ACCIDENT AND CASUALTY INSURANCE CO., et al., Defendants.

No. 82 Civ. 7327 (VLB).

United States District Court, S.D. New York.

Feb. 9, 1995.

---

Robert S. Rifkind, Cravath, Swaine & Moore, New York City, for plaintiff.

Keith M. Bonner, Washington, DC, for defendant Utica Mut.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This litigation involves controversies between E.R. Squibb & Sons ("Squibb"), a pharmaceutical manufacturer, and a number of its insurers in connection with product liability claims against Squibb arising out of injuries incurred by users of the product diethylstilbestrol ("DES").

This case has generated three decisions on motions concerning the merits. A memorandum order dated April 21, 1992, *E.R. Squibb & Sons v. Accident & Cas. Ins. Co.*, 1992 WL 133899, 1992 U.S.Dist. LEXIS 6255 (S.D.N.Y.1992), granted partial summary judgment to Squibb concerning criteria for liability for defense costs. A memorandum order dated May 20, 1994, *E.R. Squibb & Sons v. Accident & Cas. Ins. Co.*, 853 F.Supp. 98 (S.D.N.Y.) granted partial summary judgment in favor of Squibb concerning several issues regarding liability for underlying indemnification and denied the application of several defendants for dismissal of the case for lack of a case or controversy under Article III of the Constitution. A further memorandum order dated July 28, 1994, *E.R. Squibb & Sons v. Accident & Cas. Ins. Co.*, 860 F.Supp. 124 (S.D.N.Y.) responded to defendants' motion for reconsideration of, and for clarification of several points discussed in, the May 1994 order.

By motion filed December 9, 1994 defendant Utica Mutual Insurance Company ("Utica") seeks a summary judgment in its favor on the ground that Utica's policy issued to Squibb concerning DES will never become the basis for required payment to Squibb.

Utica's motion is denied.

### II

Utica's motion is based upon its interpretation of its excess insurance policy, issued September 23, 1970 and cancelled effective January 1, 1971, as requiring Squibb or a lower-tier carrier to satisfy a high deductible ($5.3 million as calculated by Utica's counsel) regardless of exhaustion of underlying policies, and the assumption that it is so unlikely that such a deductible can ever be satisfied that the disputes involved in this litigation do not rise to the level of a case or controversy under Article III.

The pertinent policy language is as follows:

\* \* \*

Item 3. LIMIT(S) OF COVERAGE HEREUNDER:

$1,250,000. each and every occurrence covering Personal Injury and/or Property Damage Liability or both combined subject to annual aggregate limits of $1,250,000. for Products Personal Injury and $1,250,000. for Products Property Damage Liability part of $5,000,000. for each and every occurrence covering Personal Injury or Property Damage Liability or both combined subject to annual aggregate limits of $5,000,000. for Products Personal Injury and $5,000,000. for Products Property Damage Liability excess of limit scheduled in Item 2.

\* \* \*

Item 2 . . . is stated as follows:

\* \* \*

(B) Home Indemnity Company $5,000,-000. Each and every occurrence covering Personal Injury or Property Damage Liability or both combined subject to annual aggregate limits of $5,000,000. for Products Personal Injury and $5,000,000. for Products Personal Damage Liability excess of A.

above [containing the same language as to another first tier carrier].

\* \* \*

### CONDITIONS

\* \* \*

... Unless specifically stated to the contrary in Items 2 and 3 ... the coverage provided ... applies only with respect to each accident or occurrence for limits in excess of the amount provided for same in the underlying insurance and is not to apply as primary insurance in the event of exhaustion of aggregate limits (if any) in the underlying insurance.

### III

The CONDITIONS paragraph quoted recognizes that item 3 takes precedence over its more general provisions if explicit. Item 3 in turn refers to item 2 which sets forth that Utica is responsible up to overall limits set forth for claims "excess of" those covered by other carriers described in item 2. Item 3 if read as complete, which it appears on its face to be, has the ordinary meaning that Utica will be responsible should the lower-tier carriers' coverage be exhausted by their terms, including through payment up to an overall policy maximum imposed by the policies of such other carriers.

Item 3 could be read as insufficiently specific to overcome the implication of the CONDITIONS paragraph that Utica's policy will never serve as primary insurance, but such a construction would give little weight to the more general concept that specifically negotiated individualized terms take precedence over standard language in case of doubt.

No parol evidence which might shed light on the intent of the parties has been suggested by any party. No precedents or other materials dealing with language of the type utilized here has been provided.

### IV

A possible source of guidance on the merits of the issue of policy construction raised by Utica might be the premium paid to Utica for the policy at issue as compared with that paid for policies of Utica or others involving similar risks where exhaustion of an aggregate policy limit by a primary carrier would without the potentially restrictive paragraph quoted above.

Such comparisons might shed light on "reasonable expectations" of the parties. *Colson Corp. v. INA,* 874 F.Supp. 65 (S.D.N.Y.1994). While the parties have made submissions on the subject, the papers contain assumptions which cannot be resolved on the present record.

Consequently, summary judgment cannot be awarded to Utica on the assumption that its construction of its policy is the correct one. Squibb has also submitted evidence that some DES recoveries exceed the amounts which might trigger Utica's policy under its own interpretation of its policy. See Anderson, "DES Jury Verdicts Affirmed on Appeal," NYLJ Jan. 19, 1995 at 1.

While not independently dispositive, it is significant in evaluating Utica's motion for summary judgment that it waited until December 1994 to raise an issue based upon the face of its 1970 policy, at issue in this 1982 case, and in particular to wait to present its current contentions until after conclusion of motion practice relating to the same issues on two prior occasions during 1994. See *E.R. Squibb & Sons v. Accident & Cas. Ins. Co.,* 853 F.Supp. 98, 101–103 (S.D.N.Y.1994).

SO ORDERED.